FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 JAN 24 AM 9:50

CLERK
SO. DIST. OF GA.

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA,
STATESBORO DIVISION

LYNETTE TANKERSLEY EDEN, )
)
Plaintiff, )
)
vs. ) Case No. CV605-043
)
CITIFINANCIAL AUTO, LTD., )
)
Defendant. )

**DEFENDANT CITIFINANCIAL AUTO, LTD.'S
MOTION FOR SUMMARY JUDGMENT,
STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED,
AND RESPONSE TO PLAINTIFF'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, Defendant CitiFinancial Auto, Ltd. ("CitiFinancial") moves the Court for summary judgment in its favor as to each of the claims asserted in Plaintiff's Complaint and as to CitiFinancial's counterclaim against Plaintiff.

This motion is supported by the pleadings, the transcripts of the depositions of Plaintiff and her son, Ramsey Eden, the affidavit of Thomas Jacobs, CitiFinancial's statement of material facts as to which there is no genuine issue to be tried annexed hereto, and the accompanying memorandum of law.

**CITIFINANCIAL'S STATEMENT OF FACTS MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

1. Plaintiff Lynette Tankersley Eden and her son, Ramsey Eden, co-signed a loan to purchase a Toyota Corolla on March 7, 2002. [Transcript of the deposition of Lynette T. Eden ("L. Eden Dep."), p. 35, 37-38 and Ex. 1; transcript of the deposition of Ramsey Eden ("R. Eden Dep."), pp. 27-29 and Ex. 1; Affidavit of Thomas Jacobs ("Jacobs Aff."), ¶ 3 and Ex. A; Complaint, ¶ 8]

2. CitiFinancial, at that time known as "Arcadia Financial, Ltd.," purchased the loan and security interest. [Jacobs Aff., 3 and Ex. B; Complaint, ¶ 9]

3. The Retail Installment Contract and Security Agreement signed by both Plaintiff and Ramsey Eden, specifically provides that

> D. [CitiFinancial] may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
>
> E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

[Jacobs Aff., Ex. B at Remedies ¶¶ D, E]

4. Both Plaintiff and Ramsey Eden understood that CitiFinancial had the right to repossess the car and sue for the deficiency balance if payments were not timely made on the loan. [R. Eden, Dep., p. 37 and Ex. 3; L. Eden Dep., p. 61]

5.      Plaintiff and her son subsequently defaulted on the loan. [R. Eden Dep., pp. 37-39; Jacobs Aff., ¶ 5]

6.      On July 15, 2003, CitiFinancial sent letters to Plaintiff and her son notifying them that the account was in default and that CitiFinancial was going to exercise its rights, including the right to repossess the car. [Jacobs Aff., ¶ 5 and Exs. C and D]

7.      The default was not cured. [Jacobs Aff., ¶ 6]

8.      Therefore, on December 3, 2003, the car was repossessed. [R. Eden Dep., p. 40-41; Jacobs Aff., ¶ 6] Ramsey Eden, who had possession of the car, voluntarily surrendered the car to the repossession company. [R. Eden Dep., p. 41; Jacobs Aff., ¶ 6]

9.      The next day, December 4, 2003, in compliance with O.C.G.A. §§ 11-9-611 and 10-1-36, CitiFinancial sent to Plaintiff and her son by certified mail letters notifying them that CitiFinancial had the car (which, of course, Ramsey Eden already knew), that CitiFinancial planned to sell the car at a private sale, the date of the proposed sale, that they had a right to request a public sale, that CitiFinancial might seek from them the deficiency after the sale, and that they had a right to redeem the car prior to the sale. [Jacobs Aff., ¶ 7 and Exs. E and F]

10.     The December 4, 2003 letters are based on the form provided in O.C.G.A. § 11-9-614.

11. Neither Plaintiff nor her son attempted to redeem the automobile. [R. Eden Dep., 46; Jacobs Aff., ¶ 8]

12. Therefore, on March 11, 2004, the car was sold at auction. [Jacobs Aff., ¶ 8]

13. On March 17, 2004, CitiFinancial sent letters to Plaintiff and her son informing them that the repossessed automobile had been sold, that the deficiency amount was $6,887.94, and that CitiFinancial may pursue a deficiency claim against them. [Jacobs Aff., ¶ 8 and Exs. G and H]

## CITIFINANCIAL'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Denied as stated. See CitiFinancial's Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("CitiFinancial's Statement"), ¶¶ 1, 2.

2. Denied. The contract lists the cash price as $12,770.63.

3. Calls for a legal conclusion. Except as stated, denied.

4. Admitted.

5. Denied. See CitiFinancial's Statement, ¶¶ 9, 10.

6. Denied. See CitiFinancial's Statement, ¶ 13.

7. Admitted.

This 23rd day of January, 2006.

A. William Loeffler
Georgia Bar No. 755699
Bryony H. Bowers
Georgia Bar No. 070393

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 885-3900

Counsel for Defendant
CitiFinancial Auto, Ltd.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA,
STATESBORO DIVISION

LYNETTE TANKERSLEY EDEN, )
)
Plaintiff, )
)
vs. ) Case No. CV605-043
)
CITIFINANCIAL AUTO, LTD., )
)
Defendant. )

**AFFIDAVIT OF THOMAS JACOBS**

Personally appeared before the undersigned officer, duly authorized to administer oaths, Thomas Jacobs, who states under oath as follows:

1.

My name is Thomas Jacobs. I am over the age of twenty-one (21) years old and am competent to make this Affidavit. The statements set forth in this affidavit are based upon my personal knowledge and upon my review of documents, records, and data compilations made and kept in the regular course of the business activities of CitiFinancial Auto, Ltd. ("CitiFinancial"), including the documents attached to this Affidavit. It is and has been the regular practice of CitiFinancial to make such documents, records, and data compilations at the time of the act(s), event(s), or transaction(s) recorded therein, or within a reasonable time thereafter. I am familiar with the practices of CitiFinancial regarding the making and

maintaining of such documents, records, and data compilations.

2.

I am Senior Operations Manager. I am, and have been at all times, responsible for Remarketing Operations.

3.

According to CitiFinancial's business records, Plaintiff Lynette Tankersley Eden and her son, Ramsey Eden, co-signed a loan to purchase a Toyota Corolla on March 7, 2002. (A copy of the Retail Purchase Contract is attached hereto as Ex. A) CitiFinancial, at that time known as "Arcadia Financial, Ltd.," purchased the loan and security interest. (A copy of the Retail Installment Contract and Security Agreement evidencing the assignment to Arcadia Financial, Ltd. is attached hereto as Ex. B)

4.

The Retail Installment Contract and Security Agreement signed by both Plaintiff and Ramsey Eden, specifically provides that

> D. [CitiFinancial] may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
>
> E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

See Ex. B at Remedies ¶¶ D, E.

5.

Plaintiff and her son subsequently defaulted on the loan. On July 15, 2003, CitiFinancial sent letters to Plaintiff and Ramsey Eden notifying them that the account was in default and that CitiFinancial was going to exercise its rights, including the right to repossess the car. (Copies of these letters are attached hereto as Exs. C and D)

6.

The default was not cured. Therefore, on December 3, 2003, the car was repossessed. Ramsey Eden, who had possession of the car, voluntarily surrendered the car to the repossession company.

7.

The next day, December 4, 2003, in compliance with O.C.G.A. §§ 11-9-611 and 10-1-36, CitiFinancial sent to Plaintiff and Ramsey Eden via Certified Mail, at their last known addresses, letters notifying them that CitiFinancial had the car, that CitiFinancial planned to sell the car at a private sale, the date of the proposed sale, that they had a right to request a public sale, that CitiFinancial might seek from them the deficiency after the sale, and that they had a right to redeem the car prior to the sale. (Copies of these letters are attached hereto as Exs. E and F)

8.

Neither Plaintiff nor her son attempted to redeem the automobile. Therefore, on March 11, 2004, the car was sold at auction. On March 17, 2004, CitiFinancial sent letters to Plaintiff and her son informing them that the repossessed automobile had been sold and that the deficiency amount was $6,887.94. (Copies of these letters are attached hereto as Exs. G and H)

9.

CitiFinancial has acted in good faith, and without malice, ill-will, or willfulness, at all times relevant to the matters alleged in Plaintiff's Complaint. CitiFinancial has not engaged in any willful misconduct, nor has it willfully violated any applicable statute. In this matter, CitiFinancial was simply pursuing its rights as a creditor; it did no act with an intent to injure Plaintiff or anyone else.

10.

The amount of the deficiency balance still owing on the loan after dispossession of the car at public auction is $6,887.94.

Further affiant sayeth naught.

Thomas Jacobs

Sworn and subscribed before me
This 20th day of January, 2006.

Notary Public

LISA SMITH NOTARY PUBLIC STATE OF COLORADO
MY COMMISSION EXPIRES DECEMBER 16, 2007

My commission expires:
12|16|07

DEAL # 14996

# Chatham Parkway TOYOTA

7 Park of Commerce Way • Savannah, GA 31405
(912) 231-2020 • Fax (912) 231-2022
www.chathamparkwaytoyota.net

## RETAIL PURCHASE CONTRACT

AUTHORIZATION FOR INITIAL CREDIT INVESTIGATION

BUYER'S INITIAL HERE [ ] CO-BUYER'S INITIAL HERE [ ]

| DATE | SALESMAN |
|---|---|
| 03/07/2002 | DONALD H. WARREN |

| | Buyer | Co-Buyer |
|---|---|---|
| NAME | LYNETTE T EDEN | RAMSEY EDEN |
| SOC. SEC. # | 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 | 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 |
| DRIVER'S LIC. | 257966829 11/03/1954 | 255731564 10/01/1983 |
| STREET | 294 MIMOSA ST | 294 MIMOSA ST |
| CITY | RICHMOND HILL | RICHMOND HILL |
| COUNTY | BRYAN | BRYAN |
| STATE | GA | GA |
| ZIP | 31324 | 31324 |
| PHONE # H. | (912)756-7554 | (912)756-7554 |
| W. | (912)748-1318 | (912)925-7048 |
| E-MAIL | | |

☐ NEW ☒ USED ☐ DEMO

| YEAR | MAKE | MODEL | SERIAL NUMBER |
|---|---|---|---|
| 1998 | TOYOTA | COROLLA | 2T1BR12E2WC042388 |

| COLOR | BODY | ODOMETER | STOCK NUMBER |
|---|---|---|---|
| BLUE | 4DR | 63728 | 30085A |

**OPTIONS** — STOCK CARS LIST ONLY DEALER ADDED OPTIONS / ORDERED CARS ATTACH COPY OF ORDER

| # | | $ | | $ |
|---|---|---|---|---|
| 1 | | NONE | | NONE |
| 2 | | NONE | | NONE |
| 3 | | NONE | | NONE |
| 4 | | NONE | | NONE |
| 5 | | NONE | | NONE |

| | |
|---|---|
| SELLING PRICE (INCL FREIGHT) | 11595.00 |
| TRADE ALLOWANCE | 3385.00 |
| TRADE DIFFERENCE | 8210.00 |
| FEES | 299.00 |
| SUB TOTAL | 8509.00 |
| LUXURY TAX | NONE |
| SALES TAX | 595.63 |
| WARRANTY RIGHTS FEE | NONE |
| TITLE | 18.00 |
| ESTIMATED PAYOFF | 2586.78 |
| EXTENDED WARRANTY MO. MILES 100000 | 580.00 |
| TOTAL CASH DEL PRICE | 12289.41 |
| EARNEST MONEY RECEIPT # | NONE |
| CASH ON DELIVERY RECEIPT # | 1000.00 |
| CREDIT MEMO | NONE |
| TOTAL DOWN PAYMENT | 1000.00 |
| UNPAID BALANCE | 11289.41 |

### DESCRIPTION OF TRADE IN

| YEAR | MAKE | MODEL/SERIES | TAG | MILEAGE |
|---|---|---|---|---|
| 1991 | HONDA | ACCORD | | 89545 |

| SERIAL NUMBER | UPON VERIFICATION BUYER AGREES TO PAY AMOUNT EXCEEDING THIS FIGURE | BALANCE OWED ON TRADE IN | ESTIMATED PAYOFF |
|---|---|---|---|
| 1HGCB7156MA008678 | | | 2586.78 |

### PAYOFF

PAYOFF LIENHOLDER WACHOVIA ACCOUNT DATE

ADDRESS 1431 THOMAS LANGSTON RD WINTERVILLE NC ZIP 28590

PAYOFF QUOTED BY GOOD THRU

### ESTIMATED PAYOFF ACKNOWLEDGMENT

I UNDERSTAND THE PAYOFF AMOUNT IS ONLY AN ESTIMATE. I AGREE, IF THE ESTIMATED PAYOFF IS HIGHER, I WILL PAY CHATHAM PARKWAY TOYOTA THE BALANCE DUE. IF THE PAYOFF IS LOWER, CHATHAM PARKWAY TOYOTA WILL REFUND THE DIFFERENCE.

BUYER'S INITIAL HERE [LTE] CO-BUYER'S INITIAL HERE [RHE]

I VERIFY THAT THE TITLE SURRENDERED AS TRADE IN CONNECTION WITH THIS TRANSACTION IS A VALID TITLE AND IS NOT A SALVAGE TITLE OR A REBUILT TITLE AND IS FREE AND CLEAR OF ANY ENCUMBRANCES OTHER THAN THE LIEN PAYOFF AS INDICATED IN THIS TRANSACTION.

BUYER'S INITIAL HERE [LTE] CO-BUYER'S INITIAL HERE [RHE]

### INSURANCE INFORMATION

INSURANCE CO. LIBERTY MUTUAL

POLICY A07-251-281906-10 AGENT D GUERRERO

STREET 1750 BEAVER RUIN RD/100

CITY NORCROSS STATE GA ZIP 30093

TELEPHONE #

ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS CONTRACT OR THE BREACH THEREOF, SHALL BE SETTLE BY ARBITRATION IN GEORGIA IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION AND JUDGEMENT UPON THE AWARD RENDERED BY ARBITRATION MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

BUYER'S INITIAL HERE [LTE] CO-BUYER'S INITIAL HERE [RHE]

ACCEPTED

NOT VALID UNLESS ACCEPTED BY A MANAGER OF THE COMPANY

### RESCISSION AGREEMENT

UPON SIGNING OF THIS PURCHASE ORDER SELLER AND BUYER AGREE THAT SELLER MAY RESCIND THE RETAIL INSTALLMENT CONTRACT SHOULD THE ASSIGNMENT OF SUCH CONTRACT BE REFUSED BY ANY LENDING INSTITUTION UPON RESCISSION, BUYER AGREES TO RETURN THE VEHICLE WITHIN 24 HOURS OF NOTIFICATION AND SELLER AGREES TO RETURN ALL CONSIDERATIONS RECEIVED FROM BUYER, LESS DAMAGES TO VEHICLE IN THE ALLOTTED TIME BUYER SHALL PAY THE SUM OF $75.00 PER DAY AND 25 CENTS PER MILE FOR DAMAGES.

RHE / LTE

### TERMS AND CONDITIONS

Purchaser agrees that this order includes all of the terms and conditions on both the face and reverse side hereof, that this order cancels and supersedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of the agreement relating to the subject matters covered hereby.

I warrant the truth and accuracy of the foregoing information and I hereby certify that I am over 18 years of age.

I hereby acknowledge having read and understand all the provisions on both sides of this page and RECEIPT OF A COPY OF THIS CONTRACT.

BUYER'S SIGNATURE

NOTICE: BE SURE YOUR SALESMAN GIVES YOU A SIGNED COMPANY RECEIPT FOR ANY CASH TENDERED.

DEFENDANT'S EXHIBIT 1 10-26-05

022

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT No. 235532I Date MARCH 7th, 2002 | Seller CHATHAM PARKWAY TOYOTA 7 PARK OF COMMERCE WAY SAVANNAH GA 31405 "We" and "us" mean the Seller above, its successors and assigns. | Buyer LYNETTE T EDEN RONSEY EDEN 294 WINDOR ST RICHMOND HILL GA 31324 "You" and "your" mean each Buyer above, and guarantor, jointly and individually. |
|---|---|---|

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments.

Description of Motor Vehicle Purchased: Year 1998 Make TOYOTA Model COROLLA VIN 2T1BR12E2WC042388 Lic. No./Year ☐ New ☒ Used Other:

Description of Trade-in: 1991 HONDA ACCORD 1HGCB7156MA000578

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 11789.41, plus finance charges accruing on the unpaid balance at the rate of 12.49 % per year from today's date until maturity. Finance charges accrue on a 365 day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at 12.49 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay an additional, nonrefundable finance charge of $ N/A that will be ☐ paid in cash. ☐ added to the Cash Price. ☐ paid proportionally with each payment.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ N/A if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 1798.22 |
|---|---|---|---|---|
| 12.49 % | $ 4164.59 | $ 11789.41 | $ 15954.00 | $ 17752.22 |

Payment Schedule: Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 265.90 | MONTHLY, BEGINNING: APRIL 15th, 2002 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.

☒ **Late Charge:** If a payment is more than 10 days late, you will be charged THE LESSOR OF $50.00 OR 5% OF PMT DUE

**Prepayment:** If you pay off this Contract early, you ☐ may ☐ will not have to pay a Minimum Finance Charge.

☐ If you pay off this Contract early, you will not be entitled to a refund of part of the Additional Finance Charge.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured ____ ☐ Single ☐ Joint Prem. $ N/A Term N/A

Credit Disability: Insured ____ ☐ Single ☐ Joint Prem. $ N/A Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer ____ dob ____ Buyer ____ dob ____

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A. If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

- ☐ $ N/A Deductible, Collision Coverage $ N/A
- ☐ $ N/A Deductible, Comprehensive Cov. $ N/A
- ☐ Fire-Theft and Combined Additional Coverage $ N/A
- ☐ ____ $ N/A

Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.

☒ **SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Service Contract to cover 72 MONTHS/100000 MILES. This Service Contract will be in effect for 72 MOS./100000 MILES.

**ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---|
| Vehicle Price (incl. sales tax of $ 753.63) | $ 12198.63 |
| Service Contract, Paid to: FMS | $ 580.00 |
| Amount to Finance line e. (if e. is negative) | $ N/A |
| Cash Price | $ 12778.63 |
| Manufacturer's Rebate | $ N/A |
| Cash Down Payment | $ 1000.00 |
| Deferred Down Payment | $ N/A |
| a. Total Cash/Rebate Down | $ 1000.00 |
| b. Trade-In Allowance | $ 3385.00 |
| c. Less: Amount owing, Paid to: WACHOVIA | $ 2586.78 |
| d. Net Trade-In (b. minus c.) | $ 798.22 |
| e. Net Cash/Trade-In (a. plus d.) | $ 1798.22 |
| Down Payment (e.; disclose as $0 if negative) | $ 1798.22 |
| Unpaid Balance of Cash Price | $ 10972.41 |
| Paid to Public Officials - Filing Fees TAG/WINTE | $ 18.00 |
| Insurance Premiums* | $ N/A |
| Additional Finance Charge(s), Paid to Seller | $ N/A |
| To: IMIA | $ 500.00 |
| To: CHATHAM PARKWAY TOYOTA* | $ 299.00 |
| To: | $ N/A |
| To: | $ N/A |
| Total Other Charges/Amounts Pd. to Others | $ 817.00 |
| Less: Prepaid Finance Charges | $ N/A |
| Amount Financed | $ 11789.41 |

*We may retain or receive a portion of this amount.

**NOTICE TO BUYER**

**Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to an exact copy of the contract you sign.**

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

**ASSIGNMENT:** This Contract and Security Agreement is assigned to ARCADIA FINANCIAL LTD. the Assignee, phone (800)778-7762. This assignment is made ☐ under the terms of a separate agreement. ☐ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse.

Seller: By [signature] 03/07/2002

Buyer Signature [signature] LYNETTE T EDEN 03/07/2002 Date

Signature [signature] RONSEY EDEN 03/07/2002 Date

Seller: By [signature]

GEORGIA RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

ExpCon® © 1995, 1999 Bankers Systems, Inc., St. Cloud, MN Form

(page 1 of 2)

MOTOR VEHICLE – NOT FOR MANUFACTURED HOMES

DEFENDANT'S EXHIBIT 3 10-20-05

CITI 0018

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the Items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

The law of Georgia will govern this transaction. It is also governed by applicable federal law and regulations. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be in Georgia, unless otherwise required by law.

**NAME AND LOCATION:** Your name and address indicated on page 1 are your exact legal name and your principal residence. You will provide us with at least 30 days notice prior to changing your name or principal residence.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

A. You fail to perform any obligation that you have undertaken in this Contract.
B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs, reasonable attorneys' fees (if referred for collection to an attorney not a salaried employee of ours) and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. Notice of intent to dispose of the personal property will be delivered to you within 10 days pursuant to Ga. Code Ann. § 44-14-411.1. You will have 30 days from the date of this notice to claim the personal property. If you do not claim the personal property, a second notice will be sent. If you do not claim the personal property within 30 days after the date of the second notice, the personal property will be disposed of. Any proceeds will be disposed according to Ga. Code Ann. § 44-14-412.

**WAIVER AND ASSIGNMENT OF EXEMPTIONS:** You waive and relinquish all exemptions as they relate to any interest in the Property. You assign to us sufficient amount of exemptions to pay the amount due under this Contract. You direct any trustee to deliver to us a sufficient amount of the Property claimed as exempt to pay off the amount so allowed on this debt.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

### THIRD PARTY AGREEMENT

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

| Signature | Date |
|---|---|

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

### ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

CITI 0019

Expere® © 1992, 1998 Bankers Systems, Inc., St. Cloud, MN Form [illegible]

# ARCADIA FINANCIAL LTD

July 15, 2003

Lynette T Eden
Po Box 756
Brooklet, GA 30415-0756

RE: Account #1071368301

Dear Lynette:

This is to inform you that your account with Arcadia Financial Ltd., a/k/a Arcadia Auto Finance Ltd., ("Arcadia") is currently in default. Under the terms and conditions contained within the retail installment contract dated March 7, 2002 between you and Arcadia (the "Contract"), we hereby demand that all outstanding payments be brought current no later than July 20, 2003. The amount due as of that date will be $558.38.

If payment is not received by the due date listed above, we will have no alternative but to exercise all creditors' remedies legally available to Arcadia to collect the outstanding balance, including, but not limited to, repossession of the Toyota Corolla securing the debt. Under the terms of the Contract, you will be responsible for all costs associated with the collection of the debt, including, but not limited to, late charges, costs of repossession, and reasonable attorneys' fees to the extent permitted by law.

In addition to the outstanding payment(s), there may be other bases for default under the Contract. By not describing such other defaults, or by not asserting such defaults in this letter, Arcadia does not waive or approve of such other defaults in any manner.

To the extent that Arcadia has allowed deviation from the terms of the Contract, please be advised that as of the date of this notice, Arcadia hereby demands strict compliance with the terms of the Contract.

If you have any questions, write or telephone Arcadia immediately at the address or telephone number listed below.

Sincerely,

ARCADIA FINANCIAL LTD.

DEFENDANT'S EXHIBIT
6 10-20-05

CITI 0003

# ARCADIA FINANCIAL LTD

July 15, 2003

Russell Eden
294 Mimosa St
Richmond Hill, GA 31324-4040

RE: Account #1071368301

Dear Russell:

This is to inform you that your account with Arcadia Financial Ltd., a/k/a Arcadia Auto Finance Ltd., ("Arcadia") is currently in default. Under the terms and conditions contained within the retail installment contract dated March 7, 2002 between you and Arcadia (the "Contract"), we hereby demand that all outstanding payments be brought current no later than July 20, 2003. The amount due as of that date will be $558.38.

If payment is not received by the due date listed above, we will have no alternative but to exercise all creditors' remedies legally available to Arcadia to collect the outstanding balance, including, but not limited to, repossession of the Toyota Corolla securing the debt. Under the terms of the Contract, you will be responsible for all costs associated with the collection of the debt, including, but not limited to, late charges, costs of repossession, and reasonable attorneys' fees to the extent permitted by law.

In addition to the outstanding payment(s), there may be other bases for default under the Contract. By not describing such other defaults, or by not asserting such defaults in this letter, Arcadia does not waive or approve of such other defaults in any manner.

To the extent that Arcadia has allowed deviation from the terms of the Contract, please be advised that as of the date of this notice, Arcadia hereby demands strict compliance with the terms of the Contract.

If you have any questions, write or telephone Arcadia immediately at the address or telephone number listed below.

Sincerely,

ARCADIA FINANCIAL LTD.

DEFENDANT'S EXHIBIT
5 10-20-05

CITI 0004

# ARCADIA FINANCIAL LTD

December 4, 2003

NOTICE OF OUR PLAN TO SELL PROPERTY

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Lynette T Eden
103 Valley Rd Apt 55
Statesboro, GA 30458-4763

Re: Account # 1071368301

Dear Lynette:

We have your 1998 TOYOTA COROLLA (VIN 2T1BR12E2WC042388) ( the "Collateral") , because you broke promises in our agreement.

We will sell the Collateral at private sale sometime after December 14, 2003 . A sale could include a lease or license.

NOTICE: You have a right to request that the collateral be sold at public sale. You must notify us of your request in writing within ten (10) days of posting of this notice. Your request must be sent to us at Arcadia Financial Ltd, Forest Park Two, 820 FOREST Point Circle STE A, Charlotte, NC 28273 by registered mail or certified mail.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you may still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the Collateral back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at (888) 350-9061.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at (888) 350-9061 or write us at Arcadia Financial Ltd, Forest Park Two, 820 FOREST Point Circle STE A, Charlotte, NC 28273 and request a written explanation.

If you need more information about the sale call us at (888) 350-9061 or write us at Arcadia Financial Ltd, Forest Park Two, 820 FOREST Point Circle STE A, Charlotte, NC 28273.

We are sending this notice to other people who have an interest in the Collateral or who owe money under your agreement.

Personal property will be removed from the Collateral and stored for a period of thirty (30) days. We will dispose of any personal property not claimed within such thirty (30) day period.

**If your personal liability to pay the amount owed on the account has been discharged in bankruptcy, you will not be liable for any deficiency.**

Sincerely

ARCADIA FINANCIAL LTD.

CITI 0005

DEFENDANT'S EXHIBIT
8 10-20-05

NS1000GAV1.doc

# ARCADIA FINANCIAL LTD

December 4, 2003

NOTICE OF OUR PLAN TO SELL PROPERTY

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Russell Eden
123 Tinker Blvd
Warner Robins, GA 31093-3241

Re: Account # **1071368301**

Dear Russell:

We have your 1998 TOYOTA COROLLA (VIN 2T1BR12E2WC042388) ( the "Collateral") , because you broke promises in our agreement.

We will sell the Collateral at private sale sometime after December 14, 2003 . A sale could include a lease or license.

NOTICE: You have a right to request that the collateral be sold at public sale. You must notify us of your request in writing within ten (10) days of posting of this notice. Your request must be sent to us at Arcadia Financial Ltd, Forest Park Two, 820 FOREST Point Circle STE A, Charlotte, NC 28273 by registered mail or certified mail.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you may still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the Collateral back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at (888) 350-9061.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at (888) 350-9061 or write us at Arcadia Financial Ltd, Forest Park Two, 820 FOREST Point Circle STE A, Charlotte, NC 28273 and request a written explanation.

If you need more information about the sale call us at (888) 350-9061 or write us at Arcadia Financial Ltd, Forest Park Two, 820 FOREST Point Circle STE A, Charlotte, NC 28273.

We are sending this notice to other people who have an interest in the Collateral or who owe money under your agreement.

Personal property will be removed from the Collateral and stored for a period of thirty (30) days. We will dispose of any personal property not claimed within such thirty (30) day period.

**If your personal liability to pay the amount owed on the account has been discharged in bankruptcy, you will not be liable for any deficiency.**

Sincerely

ARCADIA FINANCIAL LTD.

DEFENDANT'S EXHIBIT
7 10-20-05

CITI 0006

NS1000GAV1.doc

# ARCADIA FINANCIAL LTD

Arcadia Financial Ltd.,
5715 Old Shakopee Road
Bloomington, MN 55437

March 17, 2004

Lynette T Eden
103 Valley Rd Apt 55
Statesboro, GA 30458-4763

Re: Account # 1071368301

Dear Lynette

We have sold the collateral securing the payment of the referenced account. This letter provides an explanation of the calculation of the surplus or deficiency on the account resulting from such sale. If the sale resulted in a surplus on your account, the surplus will be paid to you unless we are required to pay it to someone else. If the sale resulted in a deficiency on the account, you may be liable for the deficiency. The calculation is as follows:

| | | |
|---|---|---|
| Aggregate amount of obligations secured by the collateral as of March 10, 2004 (This amount includes a refund of any unearned finance charges) | $ | 9,785.61 |
| Less: amount of proceeds of the disposition | - $ | 3,700.00 |
| Aggregate debt after deduction of sales proceeds | $ | 6,085.61 |
| Plus: Amount of expenses, if any, incurred for repossessing, holding, preparing for disposition, processing, and disposing of the Collateral and, if allowed by law, attorneys fees | + $ | 802.33 |
| Less: Amount of credits you are known to be entitled to | - $ | |
| Amount of deficiency on the account | $ | 6,887.94 |
| Amount of surplus on the account | $ | .00 |

Future debits, credits, charges, including additional credits service charges or interest, rebates, refunds and expenses may affect the amount of the surplus or deficiency.

You may obtain additional information by contacting us at (877) 200-8555.

TO THE EXTENT YOUR OBLIGATION TO PAY THE DEFICIENCY ON THE ACCOUNT HAS BEEN DISCHARGED IN BANKRUPTCY, OR IS SUBJECT TO AN AUTOMATIC STAY UNDER TITLE 11 OF THE UNITED STATES CODE, THIS EXPLANATION IS BEING SENT TO YOU FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT THE DEFICIENCY.

Except as provided in the preceding paragraph, this explanation is also an attempt to collect a debt if a deficiency exists on the account and all information obtained from you will be used for that purpose.

Sincerely,

ARCADIA FINANCIAL LTD.

DEFENDANT'S EXHIBIT
9 10-20-05

CITI 0001

DF1000V02

# ARCADIA FINANCIAL LTD

Arcadia Financial Ltd.,
5715 Old Shakopee Road
Bloomington, MN 55437

March 17, 2004

Russell Eden
123 Tinker Blvd
Warner Robins, GA 31093-3241

Re: Account # 1071368301

Dear Russell

We have sold the collateral securing the payment of the referenced account. This letter provides an explanation of the calculation of the surplus or deficiency on the account resulting from such sale. If the sale resulted in a surplus on your account, the surplus will be paid to you unless we are required to pay it to someone else. If the sale resulted in a deficiency on the account, you may be liable for the deficiency. The calculation is as follows:

| | |
|---|---|
| Aggregate amount of obligations secured by the collateral as of March 10, 2004 | $ 9,785.61 |
| (This amount includes a refund of any unearned finance charges) | |
| Less: amount of proceeds of the disposition | - $ 3,700.00 |
| Aggregate debt after deduction of sales proceeds | $ 6,085.61 |
| Plus: Amount of expenses, if any, incurred for repossessing, holding, preparing for disposition, processing, and disposing of the Collateral and, if allowed by law, attorneys fees | + $ 802.33 |
| Less: Amount of credits you are known to be entitled to | - $ |
| Amount of deficiency on the account | $ 6,887.94 |
| Amount of surplus on the account | $ .00 |

Future debits, credits, charges, including additional credits service charges or interest, rebates, refunds and expenses may affect the amount of the surplus or deficiency.

You may obtain additional information by contacting us at (877) 200-8555.

TO THE EXTENT YOUR OBLIGATION TO PAY THE DEFICIENCY ON THE ACCOUNT HAS BEEN DISCHARGED IN BANKRUPTCY, OR IS SUBJECT TO AN AUTOMATIC STAY UNDER TITLE 11 OF THE UNITED STATES CODE, THIS EXPLANATION IS BEING SENT TO YOU FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT THE DEFICIENCY.

Except as provided in the preceding paragraph, this explanation is also an attempt to collect a debt if a deficiency exists on the account and all information obtained from you will be used for that purpose.

Sincerely,

ARCADIA FINANCIAL LTD.

DEFENDANT'S EXHIBIT
10 10-20-05

CITI 0002

DF1000V02

**CERTIFICATE OF SERVICE**

I have this day served the foregoing upon all parties by depositing a copy in the United States Mail in a properly addressed envelope with adequate postage thereon:

Charles W. Brannon, Jr., Esq.
103 Valley Road, #31
Statesboro, Georgia 30458-4759

This 23rd day of January, 2006.

A. William Loeffler