ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA,
STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 JAN 24 AM 9:50

CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| LYNETTE TANKERSLEY EDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CV605-043 |
| | ) | |
| CITIFINANCIAL AUTO, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CITIFINANCIAL AUTO, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTFF'S MOTION FOR SUMMARY JUDGMENT

Defendant CitiFinancial Auto, Ltd. files this memorandum of law in support of its motion for summary judgment and in opposition to Plaintiff's motion for partial summary judgment. CitiFinancial is entitled to judgment as a matter of law with respect to each of the claims asserted in Plaintiff's Complaint. In addition, CitiFinancial is entitled to a judgment as a matter of law on its counterclaim against Plaintiff.

### STATEMENT OF FACTS

Plaintiff Lynette Tankersley Eden and her son, Ramsey Eden, co-signed a loan to purchase a Toyota Corolla on March 7, 2002. [Transcript of the deposition of Lynette T. Eden ("L. Eden Dep."), p. 35, 37-38 and Ex. 1; transcript of the deposition of Ramsey Eden ("R. Eden Dep."), pp. 27-29 and Ex. 1; Affidavit of

Thomas Jacobs ("Jacobs Aff."), ¶ 3 and Ex. A; Complaint, ¶ 8] CitiFinancial, at that time known as "Arcadia Financial, Ltd.," purchased the loan and security interest. [Jacobs Aff., 3 and Ex. B; Complaint, ¶ 9]

The Retail Installment Contract and Security Agreement signed by both Plaintiff and Ramsey Eden, specifically provides that

> D. [CitiFinancial] may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
>
> E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

[Jacobs Aff., Ex. B at Remedies ¶¶ D, E] Both Plaintiff and Ramsey Eden understood that CitiFinancial had the right to repossess the car and sue for the deficiency balance if payments were not timely made on the loan. [R. Eden, Dep., p. 37 and Ex. 3; L. Eden Dep., p. 61]

Plaintiff and her son subsequently defaulted on the loan. [R. Eden Dep., pp. 37-39; Jacobs Aff., ¶ 5] On July 15, 2003, CitiFinancial sent letters to Plaintiff and her son notifying them that the account was in default and that CitiFinancial was going to exercise its rights, including the right to repossess the car. [Jacobs Aff., ¶ 5 and Exs. C and D]

The default was not cured. [Jacobs Aff., ¶ 6] Therefore, on December 3,

2003, the car was repossessed. [R. Eden Dep., p. 40-41; Jacobs Aff., ¶ 6] Ramsey Eden, who had possession of the car, voluntarily surrendered the car to the repossession company. [R. Eden Dep., p. 41; Jacobs Aff., ¶ 6]

The next day, December 4, 2003, in compliance with O.C.G.A. §§ 11-9-611 and 10-1-36, CitiFinancial sent to Plaintiff and her son letters notifying them that CitiFinancial had the car (which, of course, Ramsey Eden already knew), that CitiFinancial planned to sell the car at a private sale, the date of the proposed sale, that they had a right to request a public sale, that CitiFinancial might seek from them the deficiency after the sale, and that they had a right to redeem the car prior to the sale. [Jacobs Aff., ¶ 7 and Exs. E and F] The December 4, 2003 letters are based on the form provided in O.C.G.A. § 11-9-614.

Neither Plaintiff nor her son attempted to redeem the automobile. [R. Eden Dep., 46; Jacobs Aff., ¶ 8] Therefore, on March 11, 2004, the car was sold at auction. [Jacobs Aff., ¶ 8] On March 17, 2004, CitiFinancial sent letters to Plaintiff and her son informing them that the repossessed automobile had been sold and that the deficiency amount was $6,887.94. [Jacobs Aff., ¶ 8 and Exs. G and H]

Plaintiff brought this suit on April 1, 2005 in the Superior Court of Bulloch County, alleging that CitiFinancial failed to give the proper statutory notices regarding the repossession and disposition of the automobile, thereby violating Georgia's Motor Vehicle Sales Finance Act, O.C.G.A. § 10-1-30, *et seq.*,

("MVSFA") and Chapter 9 of the Uniform Commercial Code, O.C.G.A. § 11-9-1 et seq., ("UCC"). In addition, Plaintiff alleges that CitiFinancial violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., ("FCRA"). CitiFinancial timely removed this action to this Court on May 20, 2005. Discovery has concluded.

On November 23, 2005, Plaintiff filed a motion for summary judgment as to her claims under the MVSFA and the UCC.

## ARGUMENT AND CITATION OF AUTHORITY

### I. PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.

Each of Plaintiff's claims in her Complaint fail as a matter of law, entitling CitiFinancial to a summary judgment. Because CitiFinancial is entitled to summary judgment, including with respect to Plaintiff's MVSFA and UCC claims, Plaintiff's motion for partial summary judgment as to those claims must be denied.

#### A. Plaintiff's MVSFA Claim Fails As A Matter Of Law.

In her first count, Plaintiff claims that CitiFinancial violated the MVSFA by failing to notify her that CitiFinancial intended to pursue a deficiency claim (Complaint, ¶ 17), that she had a right to redeem the automobile (id. at ¶ 21), and that she had the right to demand a public sale of the automobile (id. at ¶ 24).

The MVSFA provides as follows:

> When any motor vehicle has been repossessed after default in
> accordance with Part 6 of Article 9 of Title 11, the seller or holder

> shall not be entitled to recover a deficiency against the buyer unless within ten days after the repossession he or she forwards by registered or certified mail or statutory overnight delivery to the address of the buyer shown on the contract or later designated by the buyer a notice of the seller's or holder's intention to pursue a deficiency claim against the buyer. The notice shall also advise the buyer of his or her rights of redemption, as well as his or her right to demand a public sale of the repossessed motor vehicle....

O.C.G.A. § 10-1-36(a). CitiFinancial satisfied the requirements of this statute by sending via certified mail the December 4, 2003 letter to Plaintiff's address at 103 Valley Rd. Apt. 55, Statesboro, Georgia. [Jacobs Aff., ¶ 7 and Ex. E] Plaintiff concedes that she lived at that address on December 4, 2003. [L. Eden Dep., p. 73] That letter -- which is a form letter prescribed by O.C.G.A. 11-9-614 -- duly instructed Plaintiff that:

- "[y]ou can get the Collateral back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at (888) 350-9061."

- "[y]ou have the right to request that the collateral be sold at public sale."

- "[t]he money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you may still owe us the difference."

[Jacobs Aff., ¶ 7 and Ex. E] Cf. O.C.G.A. 11-9-614. A duplicate letter was addressed and sent to Ramsey Eden at his then-current address, 123 Tinker Boulevard, Warner Robbins, Georgia. [Jacobs Aff., ¶ 7 and Ex. F; See R. Eden

Dep., p. 52; L. Eden Dep., p. 72-73] The MVSFA only requires that the letter be sent or "forwarded," not that it actually be received. O.C.G.A. § 10-1-36(a).

Plaintiff's claim fails for another reason: the MVSFA does not provide her an affirmative cause of action for an alleged violation of O.C.G.A. 10-1-36. Instead, where a violation is proven, the only "remedy" is that the creditor loses the right to pursue a deficiency claim. O.C.G.A. 10-1-36 ("the seller or holder shall not be entitled to recover a deficiency against the buyer unless within ten days...."). There is no provision in that statute, nor is there any case law decided under that statute, that affords a debtor a private right of action in these circumstances.

The civil penalties provision of the MVSFA, O.C.G.A. § 10-1-38(c), is inapplicable here. That provision applies to "willful violations of this article with respect to any transaction...." Being limited to "transactions," it is apparent that that provision applies only to violations of the MVSFA's fee and interest caps and contract form requirements imposed on the front end of a loan transaction. Repossession is not a "transaction." Moreover, O.C.G.A. § 10-1-38(c) permits the seller to recover from the buyer an amount equal to the cash price of the goods at issue. It would be contradictory to allow a seller to recover the cash price against the buyer under O.C.G.A. § 10-1-38(c), but bar the seller from any recovery against the buyer under O.C.G.A. § 10-1-36.

1566547_1.DOC

Further, O.C.G.A. § 10-1-38(c) only permits a recovery where a violation of the Act is "willful." Here, there is no evidence of willfulness.

> Q. Do you have any evidence that Arcadia or CitiFinancial ever had the willful intent to do you any harm?
>
> A. No.
>
> Q. Do you have any evidence that anyone at CitiFinancial or Arcadia ever meant any malice towards you?
>
> A. No.

[L. Eden Dep., pp. 90-91; Jacobs Aff., ¶ 9]

Plaintiff's MVSFA claim fails for the additional reason that it is time-barred. The car was repossessed on December 3, 2003 and sold at auction on March 11, 2004. Plaintiff did not file this action until April 1, 2005. While the MVSFA does not expressly provide a statute of limitations, the Eleventh Circuit has suggested that the one-year statute of limitations contained in Georgia's usury penalty statute, O.C.G.A. § 7-4-10(d), seemingly applies to causes of action under the MVSFA. Doyle v. Southern Guar. Corp., 795 F.2d 907, 914 (11th Cir. 1986).

For these reasons, CitiFinancial's motion for summary judgment should be granted with respect to Plaintiff's MVSFA claim and Plaintiff's motion for partial summary judgment as to that claim should be denied.

1566547_1.DOC

**B.     Plaintiff's UCC Claim Fails As A Matter Of Law.**

In her second count, Plaintiff alleges that CitiFinancial violated Georgia's Uniform Commercial Code by failing to notify her: that CitiFinancial intended to sell the automobile (Complaint, ¶ 30), of the method by which CitiFinancial intended to sell the automobile (id. at ¶ 33), that Plaintiff was entitled to an accounting of the unpaid debt (id. at ¶ 36), of the time after which the disposition was to be made (id. at ¶ 39), of her potential liability for a deficiency (id. at ¶ 42), of a telephone number where she could learn the amount to redeem the automobile (id. at ¶ 45), and of a telephone number or mailing address where she could obtain additional information concerning the disposition and the obligation secured (id. at ¶ 49).

In point of fact, CitiFinancial satisfied the requirements of the UCC (O.C.G.A. §§ 11-9-611 and 614) by sending via certified mail the December 4, 2003 letter to Plaintiff's address at 103 Valley Rd. Apt. 55, Statesboro, Georgia. [Jacobs Aff., ¶ 7 and Ex. E]  That letter is based upon the very form provided in the statute.  See O.C.G.A. § 11-9-614.  A simple comparison of the December 4 letters to this form reveals that CitiFinancial used this statutory form.  And, again, Plaintiff concedes that she lived at the address the letter was sent to on that date. [L. Eden Dep., p. 73]

Plaintiff also concedes that at the time of the repossession and subsequent auction of the car, she had no means to redeem the car. [L. Eden Dep., pp. 62-63, 66-67, 71-72] Ramsey Eden similarly concedes that he had no means to redeem the car. [R. Eden Dep., p. 46] Because neither she nor Ramsey Eden had any means to redeem the car, Plaintiff suffered no damages as a result of her alleged ignorance of the auction.

For these reasons, CitiFinancial's motion for summary judgment should be granted with respect to Plaintiff's UCC claim and Plaintiff's motion for partial summary judgment as to that claim should be denied.

### C.  Plaintiff's FDCPA Claim Fails As A Matter Of Law.

As her third count, Plaintiff alleges that CitiFinancial's collection activity, including contacting her after being notified that she was represented by counsel, violated the Fair Debt Collection Practices Act. That claim fails, however, as CitiFinancial is not subject to the FDCPA in this instance.

The FDCPA governs the actions of "debt collectors." Creditors who collect on their own accounts under their own names are not "debt collectors" for purposes of the Act. The Act defines a debt collector as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, ***debts owed or due or asserted to be owed or due another....***

15 U.S.C. § 1692a(6) (emphasis added). "The plain language of the statute does not include actions of a creditor taken in an effort to collect its own debts directly from its debtors." Sterling Mirror of Maryland, Inc. v. Gordon, 619 A.2d 64, 66 (D.C. App. 1993); accord Murray v. Citibank (South Dakota), N.A., 2004 U.S. Dist. LEXIS 20941 (N.D. Ill. Oct. 18 2004) ("The FDCPA imposes liability on 'debt collectors,' not creditors.... A creditor seeking to collect its own debt is not liable under the FDCPA."); Kloth v. Citibank (South Dakota), N.A., 33 F. Supp. 2d 115, 119 (D. Conn. 1998) ("Generally, the FDCPA does not apply to creditors.").

The cases are legion in which the courts have dismissed or granted summary judgment to creditors in just these circumstances. See, e.g., Aubert v. American General Finance, Inc., 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection, therefore, are not subject to the Act;" affirming summary judgment in favor of the creditor); Murray, 2004 U.S. Dist. LEXIS 20941 (granting creditor's motion to dismiss where creditor was collecting debt owed to it); Kloth, 33 F. Supp. 2d at 115 (granting creditor's motion to dismiss credit card holder's FDCPA claims); Decker v. Hibernia Nat'l Bank, 1996 WL 696323 (E.D. La. Nov. 26, 1996) (granting creditor's motion to dismiss FDCPA claim because "a 'debt collector' does not include a creditor collecting debts owed to itself."); Blalock v. World Pro Travel, Inc., 1996 WL 371800 (E.D. La. July 2, 1996) (granting summary judgment to

creditor on FDCPA claims where it attempted to collect a debt owed to it, and not the debt of another); Oldroyd v. Associates Consumer Discount, 863 F. Supp. 237, 241-42 (E.D. Pa. 1994) (granting creditor summary judgment on FDCPA claim); Meads v. Citicorp Credit Services, Inc., 686 F. Supp. 330, 333 (S.D. Ga. 1988) (dismissing FDCPA claims brought by credit card holders because the defendants were creditors, not "debt collectors" under the Act); In Re Cooper, 253 B.R. 286 (N.D. Fla. Bankr. 2000); Sterling Mirror, 619 A.2d at 64 (remanding with instructions to grant judgment to creditor as to the counterclaim plaintiff's FDCPA claim, since creditor was attempting to collect debt owed to it); Mendez v. Apple Bank for Savings, 541 N.Y.S.2d 920 (N.Y. Civ. Ct. 1989) (granting bank summary judgment on plaintiff's FDCPA claim since the bank "attempted to collect a debt owed to itself and is therefore not a debt collector as defined by this act.").

Since it is undisputed that CitiFinancial has attempted to collect the debt Plaintiff owes to CitiFinancial, CitiFinancial is not a "debt collection" and is not subject to the FDCPA.

D. **Plaintiff's FCRA Claim Fails As A Matter Of Law.**

In her fourth and last count, Plaintiff alleges that CitiFinancial violated the Fair Credit Reporting Act by "report[ing] the contested debt which is the subject of this complaint to at least one credit reporting agency." [Complaint, ¶ 73]

The FCRA specifies certain duties for furnishers of credit information.

-11-

Those duties are set out at 15 U.S.C. § 1681s-2 (Section 623). Section 1681s-2(a) specifies various duties upon furnishers to provide accurate credit information. There is no private right of action under the FCRA for a violation of this subsection. See 15 U.S.C. § 1681s-2(c) (which provides that the private actions provisions of the FCRA, §§ 1681n (willful noncompliance) and 1681o (negligent noncompliance), do not apply to any violation of 1681s-2(a)); Gorman v. Wolpoff & Abramson, LLP, 370 F. Supp. 2d 1005 (N.D. Cal. 2005). Enforcement is exclusively within the province of the federal and state regulators enumerated in § 1681s. See 15 U.S.C. § 1681s-2(d); Danielson v. Experian Information Solutions, Inc., 2004 U.S. App. LEXIS 14975 (D. Minn. July 30, 2004) (granting furnisher summary judgment on plaintiff's 1681s-2 claim for falsely reporting plaintiff as being in bankruptcy).

However, even if there were a private right of action under this statute, Plaintiff couldn't state a claim because the information reported by CitiFinancial was accurate, as she conceded in her deposition. [L. Eden Dep., p. 81] Plaintiff produced in discovery an Equifax credit report dated March 28, 2005. With respect to the CitiFinancial (Arcadia) tradeline, the "current status" of her account was reported as "repossession." [L. Eden Dep., p. 81] When asked at her deposition what information she considered to be inaccurate in her credit report, she solely referred to the entry of "repossession." [L. Eden Dep., p. 83] But, there

is no dispute that the automobile was in fact repossessed.

> Q. And under current status, it says repossession; is that accurate?
>
> A. Yes.

[L. Eden Dep., p. 81] Nor is there any dispute that the repossession was proper and lawful, given that Plaintiff and her son were undeniably in default. [L. Eden Dep., p. 60]

Section 1681s-2(b) of the FCRA sets out duties on furnishers after they have been informed by a credit reporting agency (CRA) of a dispute pursuant to § 1681i -- usually through the receipt of a CDV (consumer dispute verification). Generally, the furnisher is required to conduct an investigation, report the results to the CRA, and, if necessary, correct the information. <u>Johnson v. MBNA Am. Bank, NA</u>, 357 F.3d 426, 430-31 (4th Cir. 2004). However, the furnisher's duties under this section are triggered by receipt of notice of a customer dispute from a CRA, not from the consumer directly. <u>Peasley v. Verizon Wireless (VAW) LLC</u>, 364 F. Supp. 2d 1198 (S.D. Cal. 2005) (granting defendant-furnisher's motion to dismiss where furnisher provided notice of dispute by consumer, not by a credit reporting agency); <u>Elmore v. North Fork Bancorp.</u>, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) ("The terms of the statute are quite clear. Even assuming the existence of a private right of action for violation of Section 1681s-2(b), that right of action exists only for violations post-dating the furnisher's receipt of a report *from the credit*

*reporting agency.*") (emphasis in the original); Robinson v. American Honda Finance Corp., No. 03-2220 B/A (W.D. Tenn. March 31, 2005) (granting furnisher's motion to dismiss where no evidence that CRA informed furnisher of dispute); Downs v. Clayton Homes, Inc., 88 Fed. Appx. 851 (6th Cir. 2004).

Here, Plaintiff never reported to any CRA that she believed information on her credit report to be inaccurate. [L. Eden Dep., p. 84] Therefore, CitiFinancial could never have received notice from a CRA triggering its duty to investigate and correct any errant information. And, again, by Plaintiff's own admission, the information reported by CitiFinancial ("repossession") was accurate.

### E. Plaintiff's Claims For Attorney's Fees and Punitive Damages Fail As A Matter Of Law.

Because each of Plaintiff's substantive claims fails as a matter of law, so too do her claims for attorneys' fees (Complaint, fifth cause of action) and for punitive damages (Complaint, sixth cause of action).

1566547_1.DOC

## II. CITIFINANCIAL IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW ON ITS COUNTERCLAIM.

Plaintiff concedes she signed the loan contract, that the contract obligated her to make monthly payments, that loan went into default, and that the default was not cured. [L. Eden Dep., pp. 37, 40-41, 47-53; Jacobs Aff., ¶¶ 3-8]  Further, the uncontested evidence is that the amount of the deficiency after dispossession of the automobile at public auction is $6,887.94. [Jacobs Aff., ¶ 10]

> Q. Do you have any reason to doubt that the deficiency balance is $6,887.94?
>
> A. No.

[L. Eden Dep., p. 75]  For the reasons stated in Section I.A., above, CitiFinancial did not violate the MVSFA.  Therefore, pursuant to the terms of the loan contract, CitiFinancial is entitled to a judgment in its favor against Plaintiff in the amount of $6,887.94.

In addition, CitiFinancial is entitled to recover its costs and fees incurred in collecting on the loan, pursuant to O.C.G.A. § 13-1-11.  The Retail Installment Contract and Security Agreement provides:

> If you default, you agree to pay our costs for collecting amounts owing, including court costs, reasonable attorneys' fees (if referred for collection to an attorney not a salaried employee of ours) and fees for repossession, repair, storage and sale of the Property securing this Contract.

[Jacobs Aff., ¶ 4, Ex. B]

-15-

1566547_1.DOC

> Obligations to pay attorney's fees upon any note other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity....

O.C.G.A. § 13-1-11(a). Calculation of the amount of the fees is as follows:

> If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

O.C.G.A. § 13-1-11(a)(2).

The outstanding amount of principal and interest owed by Plaintiff is $6,887.94. [Thomas Aff., ¶ 10] Consequently, CitiFinancial is entitled to an award of attorney's fees in the amount of $713.79, calculated as follows: (.15 times $500) + (.10 times ($6,887.94 minus $500)) = $713.79.

## CONCLUSION

For the foregoing reasons, this Court should grant CitiFinancial a judgment as a matter of law as to Plaintiff's claims, and grant CitiFinancial summary judgment on its deficiency claim against Plaintiff in the amount of $6,887.94, plus its attorneys' fees and costs.

1566547_1.DOC

This 23rd day of January, 2006.

*A. William Loeffler*
A. William Loeffler
Georgia Bar No. 755699
Bryony H. Bowers
Georgia Bar No. 070393

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 885-3900

Counsel for Defendant
CitiFinancial Auto, Ltd.

## CERTIFICATE OF SERVICE

I have this day served the foregoing upon all parties by depositing a copy in the United States Mail in a properly addressed envelope with adequate postage thereon:

>Charles W. Brannon, Jr., Esq.
>103 Valley Road, #31
>Statesboro, Georgia 30458-4759

This 23rd day of January, 2006.

_____
A. William Loeffler