FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 MAY 11  PM 10: 33

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA,
STATESBORO DIVISION

| | |
|---|---|
| LYNETTE TANKERSLEY EDEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. CV605-043 |
| CITIFINANCIAL AUTO, LTD., | ) ) ) ) |
| Defendant. | ) |

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

This memorandum addresses three issues. (1) Is the failure to attempt a second post-repossession notice if the creditor actually knows that the consumer did not receive the first attempt "a willful violation" of the Motor Vehicle Sales Finance Act? (2) Is a post-repossession notice sufficient if the notice is ambiguous about the creditor's "intention to pursue a deficiency claim against the buyer"? (3) Is a consumer entitled to statutory damages if she does not prove actual damage?

Ms. Eden bought a car with a loan from the defendant. She defaulted. The defendant repossessed the car and sold it. She alleges that the defendant did not give her the statutory post-repossession notices.

I. If the Creditor Actually Knows That the Consumer Did Not Receive Post-repossession Notice but Does Nothing, Does the Creditor Commit a Willful Violation of the Motor Vehicle Sales Finance Act?

Ms. Eden must prove "a willful violation" to recover

under the Motor Vehicle Sales Finance Act.  O.C.G.A. §10-1-38(c).[1]

A post-repossession notice was never delivered to Ms. Eden.  The creditor knew this and knew it before the retail. (Doc. 39)

A.  Notice Which Is Mere Gesture Is Not Notice.

Should a creditor attempt again if it actually knows that its consumer did not receive the first notice?

In the circumstances, a creditor owes a high duty to its consumer.  "[O]wnership of a motor vehicle remains with the debtor after repossession by a creditor, without further proceedings . . ."  In re: Rozier, 376 F.3d 1323, 1324, 2004 U.S. App. Lexis 14950 (11th Cir. 2004) (Georgia law).  See Motors Acceptance Corp. vs. Rozier, 278 Ga. 52, 597 S.E. 2d 367, 2004 Ga. Lexis 470 (2004); Motors Acceptance Corp. vs. Rozier, 290 B.R. 910, 2003 U.S. Dist. Lexis 4527 (M.D. Ga. 2003).

"The secured creditor has only a security interest, and . . . has a fiduciary relationship vis-a-vis the debtor.  It follows that the creditor, in complying with the statutory notice requirement to give reasonable notification, must simply do more than go through the motions of attempting to notify the debtor."  Keatts vs. Bank of Delaware, 1984 Del. C.P. Lexis 10 (Del. C.P. 1984).

---

[1] U.C.C. statutory damages do not require willfulness, only that "a secured party failed to comply . . ."  O.C.G.A. §11-9-625(c)(2).

> One line of cases holds that in circumstances such as we find in this case, where the secured creditor has attempted to notify the debtor by certified mail which comes back unclaimed, and the creditor has sufficient time and opportunity to provide for the notification, the failure to attempt further notification is deemed violative of [the U.C.C.] Mallicoat v. Volunteer Finance & Loan Corp., Tenn. App., 57 Tenn. App. 106, 415 S.W. 2d 347 (1966); Commercial Credit Corp. v. Lloyd, D.C.Super., 12 U.C.C. Rep. 15 (1973); In re Hardie, N.D. Ohio, 17 U.C.C. Rep. 633 (1975); Geohagan v. Commercial Credit Corp., Ga.App., 130 Ga. App. 828, 204 S.E.2d 784 (1974) . . .

Keatts vs. Bank of Delaware, 1984 Del. C.P. Lexis 10 (Del. C.P. 1984).[2]

The Georgia Court of Appeals "has held that, under certain circumstances, the mere sending of notice via certified mail which is subsequently returned as 'unclaimed' will not, standing alone, satisfy the 'reasonable notification' requirements of [the U.C.C.]"[3] Calcote vs. Citizens and Southern National Bank, 179 Ga. App. 132, 133, 345 S.E. 2d 616, 618, 1986 Ga. App. Lexis 1838 (1986).

Very frequently cited, both in Georgia and out, is Geoghagan vs. Commercial Credit Corp. The factual scenario was typical. The creditor attempted to notify the consumer by certified

---

[2] In the Georgia case cited, the West Publishing Co. report and many subsequent citators misspelled Mr. Geoghagan's name. (His son John is a close friend of mine.)

[3] U.C.C. citations are pertinent. The Motor Vehicle Sales Finance Act "is cumulative of Part 6 of Article 9 of Title 11 [default in secured transactions under the U.C.C.]" O.C.G.A. §10-1-36(c). "[B]y its terms, O.C.G.A. § 10-1-36 must be read in conjunction with" the U.C.C. Calcote vs. Citizens and Southern National Bank, 179 Ga. App. 132, 133, 345 S.E. 2d 616, 618, 1986 Ga. App. Lexis 1838 (1986).

mail. It was returned "unclaimed". The creditor proceeded nonetheless. The Georgia Court of Appeals held that if the creditor had actual knowledge at the time of the sale that notice had not been delivered to the consumer, the creditor had not acted in good faith.

> If returned prior to the sale, as would appear to be the case from the length of time elapsing between mailing and the sale, we would be constrained to hold that [the creditor] had not in good faith performed its obligations in disposing of the collateral.

Geoghagan vs. Commercial Credit Corp., 130 Ga. App. 828, 831, 204 S.E. 2d 784, 786 (1974). See also Slocum vs. First National Bank, 152 Ga. App. 632, 633, 634, 263 S.E. 2d 516, 517 (1979) ("In the present case, the court found that the [creditor] made a good faith effort to notify the [consumer] by sending the notice letter a second time after it was originally returned as 'unclaimed.'"); Citizens and Southern National Bank vs. Morgan, 142 Ga. App. 337, 339, 235 S.E. 2d 767, 768 (1977) ("It is not shown here whether the notice of the sale was returned prior to or after the sale.")

Annual Harris polls of business leaders commissioned by the United States Chamber of Commerce[4] uniformly rate Delaware's judiciary the nation's most pro-business, but even the Delaware Supreme Court thinks that a repossessing creditor cannot turn a blind eye. The creditor "cannot rely on the mailed notic-

---

[4] http://instituteforlegalreform.org/harris/index.php

es . . . because it learned by return mail prior to the sale that the Debtor had not received those notices." Friendly Finance Corp. vs. Bovee, 702 A.2d 1225, 1228 (Del. 1997). See also Fidelity Financial Services, Inc. vs. Stewart, 608 So. 2d 1111, 1114 (Miss. 1992) (citing Geoghagan) ("In cases in which the creditor knows that the debtor has not received notice, this Court construes statutory law as imposing a duty on the creditor to make an additional good-faith effort to notify the debtor.") (emphasis original); National Boulevard Bank vs. Jackson, 92 Ill. App. 3d 928, 930, 416 N.E. 2d 358, 361, 1981 Ill. App. Lexis 2022 (Ill. App. 1981) ("That notice was returned to [the creditor] by the post office marked 'unclaimed.'"); Day vs. Schenectady Discount Corp., 125 Ariz. 564, 569, 611 P.2d 568, 573, 1980 Ariz. App. Lexis 440 (Ariz. App. 1980) ("Notice which is mere gesture is not notice."); General Motors Acceptance Corp. vs. Thomas, 15 Ohio Misc. 267, 272, 237 N.E. 2d 427, 430, 1968 Ohio Misc. Lexis 294 (Ohio C.P. 1968) ("Law, in light of equitable principles, is always loathe to terminate any substantive right without actual notice or full compliance with a prescribed procedure which, in common experience, results almost invariably in actual notice.")

B. The Creditor Callously Disregarded The Consumer's Right To Notice.

Factual scenarios to this point have been described as "typical". Ms. Eden's case is atypical. The Postal Service did not even attempt to deliver to her. The creditor failed to send the notice again. Was this "a willful violation" of the Motor

Vehicle Sales Finance Act? O.C.G.A. §10-1-36(a).

The following cases construed the U.C.C. Each characterized retail despite actual knowledge that the consumer did not receive notice as either a willful act, an act in the nature of a willful act, or a lack of good faith.[5]

Each describes such conduct using words like "callous", "conscious", and a clear absence of "good faith".

In Georgia a creditor who refused to make the second attempt "had not in good faith performed its obligations in disposing of the collateral." Geoghagan vs. Commercial Credit Corp., 130 Ga. App. 828, 831, 204 S.E. 2d 784, 786 (1974).[6]

In the Matter of Carter may be the most cited case. "The notice was returned unclaimed before the sale. [The creditor] made no further attempt to notify the debtor . . ." The Ninth Circuit refused to approve the notice. "The notice requirement['s] purpose is to permit the debtor to bid at the foreclosure sale or to otherwise assure that the sale was conducted in a commercially reasonable manner . . . Here that purpose has been frustrated by the failure of the bank to attempt a second delivery when it knew the notice had not been received by the debt-

---

[5] "Every contract or duty within this title [the U.C.C.] imposes an obligation of good faith in its performance or enforcement." O.C.G.A. §11-1-203. "Georgia case law emphasizes that a creditor must perform in good faith its obligations in disposing of the collateral." Lacy vs. General Finance Co., 651 F.2d 1026, 1028 (5th Cir. 1981) (Georgia law). See In re: Foskey, 1991 WL 11002470 (Bankr. S.D. Ga. 1991).

[6] Statutory damges under the MVSFA are predicated not on bad faith but on "a willful violation". O.C.G.A. §10-1-38(c).

or . . . Proceeding to sale with knowledge that the debtor had received no notice can scarcely be said to be in good faith." In the Matter of Carter, 511 F.2d 1203, 1204, 1205, 1975 U.S. App. Lexis 15916 (9th Cir. 1975) (California law).

The Ninth Circuit relied on Mallicoat vs. Volunteer Finance and Loan Corp. Notice sent by registered mail was unclaimed. The creditor took no further action to notify the consumer. "In view of the undisputed evidence in this case that the debtor did not receive the notice and that the secured creditor was aware that he had not received it, it is our opinion the creditor not only failed to show a compliance with the Act but that the record affirmatively shows a lack of compliance and a conscious disregard of the debtor's right to notice." 57 Tenn. App. 106, 112, 415 S.W. 2d 347, 350 (1966).

In Commercial Credit Corp. vs. Lloyd, a creditor sent notice certified. The notice was "unclaimed". The creditor made no further attempt, but it

> knew that [the consumer] did not receive the notice, because the notice was returned 'unclaimed.' Rather than making a second attempt to notify [the consumer, the creditor] sat back, permitted the necessary time to run, and sold the automobile . . . Had the second attempt been made, it undoubtedly would have been successful, because [the consumer] received from [the creditor], subsequent to the sale, letters sent by ordinary mail bearing the identical address dunning him for the deficiency.
>
> . . . The statutory language, particularly when considered in light of the grim realities of the unequal relationship between secured creditors and the ordin-

ary defaulting debtor, leads to the inescapable conclusion that the security holder's right to prevail must rest upon good faith compliance with the statutory notice requirement.

[The creditor] showed a callous disregard of [the consumer's] right to notice. [The creditor] was successful in locating the automobile at a place where it ordinarily would not have been . . . With much less diligence, the owner, too, could have been located, and, at the place where one would expect to find him, i. e., his home, the address of which was known to [the creditor].

Commercial Credit Corp. vs. Lloyd, 12 U.C.C. Rep. Serv. 15, 17, 18 (Callaghan & Co.) (D.C. Super. 1973).

II. Imprecision Is Fatal.

Even had the creditor's notice been delivered, it would still have been deficient. The Motor Vehicle Sales Finance Act requires notification of "intention to pursue a deficiency". O.C.G.A. §10-1-36(a).

The creditor said only that "you may still owe us the difference." (Doc. 32)

An ambiguous notice is not notice. Courts in U.C.C. cases consistently hold that a creditor is obligated "to comply strictly with the notice of sale provisions". Barbree vs. Allis-Chalmers Corp., 250 Ga. 409, 412, 297 S.E. 2d 465, 468 (1982). See also G.E.M.C. Federal Credit Union vs. Shoemake, 151 Ga. App. 705, 261 S.E. 2d 443 (1979); R.W.R., Inc. vs. D.F.T. Trucking, Inc., 899 S.W. 2d 875 (Mo. App. 1995).

Notice "must expressly state the secured party's intended disposition of the collateral and not simply that the collateral might be sold." James S. Rankin, DOBBS' GEORGIA ENFORCEMENT OF

SECURITY INTERESTS IN PERSONAL PROPERTY §8-4 (3d ed. 2002).

A "warning that the debtor would be liable for a deficiency should there be a sale is insufficient as a notice of the sale of the collateral."  Ronald A. Anderson, ANDERSON ON THE UNIFORM COMMERCIAL CODE §9-504:601 (3d ed. 1999 rev. ed.) (citing G.E.M.C. Federal Credit Union).

What should appropriate language look like?  The obvious example is the U.C.C. "safe harbor" form.  O.C.G.A. §11-9-614(3).

An example of a judicially-approved Motor Vehicle Sales Finance Act notice is quoted in In re: Foskey.  "In the event the proceeds from the sale of this collateral do not satisfy your indebtedness to us, you will be liable for any remaining balance."  1991 WL 11002470 (Bankr. S.D. Ga. 1991).

Was not CitiFinancial, by using ambiguous and indefinite words, trying to reserve its rights, not having decided how it would proceed?  Another creditor tried the same approach in Benton-Lincoln Credit Service, Inc. vs. Giffin.  "Among the remedies reserved to the contract holder is the right to sell, applying the proceeds to the expenses of the repossession and the sale and the reduction of the secured indebtedness."  The Oregon Court of Appeals would not accept this attempt to reserve rights.  "This notice did not inform plaintiff of the intended disposition of the collateral and was insufficient to meet the requirements of the statute."  48 Ore. App. 559, 561, 564, 617 P.2d 662, 663, 665 (1980).

Another idea from insurance law was borrowed to explain the

Nebraska Supreme Court's conclusion in <u>Deutsche Credit Corp. vs. Hi-bo Farms, Inc.</u>  "An ambiguity in a notice sent pursuant to the requirements of [the U.C.C.] is to be resolved against the drafter of the notice."  224 Neb. 463, 398 N.W. 2d 693, 694 (1987).

III.  Is A Consumer Entitled To Statutory Damages If She Does Not Prove Actual Damage?

Cited in previous submissions were cases from the Georgia Court of Appeals in support of the premise that Ms. Eden need not show actual damage.  A more recent decision from that court is <u>Atlantic Coast Federal Credit Union vs. Delk</u>, 241 Ga. App. 589, 591, 526 S.E. 2d 425, 427, 428 (1999).  "Even if the consumer debtor does not prove specific monetary loss but proves that the creditor did not comply with the statute, the debtor is entitled to recover the finance charge plus [ten] percent of the principal amount of the contract if he or she proves those figures."

IV.  The Purpose Of Notice Is To Allow A Consumer To Avoid Or Minimize A Deficiency.

Previously submitted was that the purpose of notification is not limited to redemption.  Cited in support were authorities from other jurisdictions.  (Doc. 42)

The Georgia Supreme Court interpreted the same statement of legislative intent.

> 'The purpose of requiring notice is three-fold.  It gives the debtor an opportunity to exercise the right of redemption of the repossessed collat-

> eral . . . It also gives him the chance to challenge any aspect of the disposition before it is made. Finally, it offers the debtor the opportunity to seek out persons who might be interested in purchasing the collateral . . . Particularly the last two of these purposes serve the ultimate goal of allowing the debtor to maximize the sale price of the collateral and, thus, minimize any deficiency for which he will be liable.'

Reeves vs. Habersham Bank, 254 Ga. 615, 621, 331 S.E. 2d 589, 595 (1985). See also Barbree vs. Allis-Chalmers Corp., 250 Ga. 409, 297 S.E. 2d 465 (1982).

V. Erratum.

Previously cited in support of the premise that the counterclaim is absolutely barred because the creditor did not give the notice mandated by the Motor Vehicle Sales Finance Act was In re Dykes, 287 B.R. 298 (Bankr. S.D. Ga. 2002).

In the previous filing, I misspelled the case name. (Doc. 28)

VI. Some questions.

Is there any question that Ms. Eden was not notified? Was she ever alerted that she needed to find a buyer? Was it in any way her fault that she did not receive notice? Did her default on the loan forfeit her rights? Did CitiFinancial actually know that she was not notified? Why could it not have just sent the notice again? Did it act in the manner that we would expect from one taking care of another's property? What does CitiFinancial's attitude appear to have been toward Ms. Eden? Can any interpretation characterize CitiFinancial's actions as having been in good faith? Did it use the same diligence after repos-

session that it used to repossess the collateral? Did its neglect frustrate the legislature's reason for requiring notice? Did it consciously disregard Ms. Eden's right? Was this neglect a willful act?

Did CitiFinancial's notice form clearly tell its customers that it intended to hold them responsible for deficiencies? Did the notice form say that CitiFinancial intended to pursue a claim or only that it might do? Was the use of this form a willful act?

Can we expect financial institutions to obey the law unless they know that they will be held accountable?

*Charles Brannon*
CHARLES BRANNON
ATTORNEY FOR PLAINTIFF
   LYNETTE EDEN
State Bar of Georgia Number 077450


103 Valley Road, Number 31
Statesboro, Georgia  30458-4759
912-489-6830

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA,
STATESBORO DIVISION

| | | |
|---|---|---|
| LYNETTE TANKERSLEY EDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CV605-043 |
| | ) | |
| CITIFINANCIAL AUTO, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

Certificate Of Service

I certify that I have today served the defendant CitiFinancial Auto, Ltd. with a copy of the attached by posting it with the United States Postal Service with adequate first class postage thereon and addressed as follows:

Mr. William Loeffler
Troutman, Sanders, L.L.P.
Suite 5200
Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia   30308-2276

This tenth day of May, 2006.

_Charles Brannon_
Charles Brannon
Attorney for plaintiff
  Lynette Eden
State Bar of Georgia Number 077450