FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 JUN 12 PM 2: 52

CLERK_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

LYNETTE TANKERSLEY EDEN,

    Plaintiff,

v.             605CV043

CitiFinancial AUTO,
LTD.,

    Defendant.

## ORDER

### I. INTRODUCTION

This lender liability case raises issues best illuminated by the following hypothetical: A sells a car to B, who buys it with money lent by C. B later defaults, and C repossesses the car. C then sends B a statutorily required notice announcing C's intent to sell the car and pursue B for any deficiency between the sale proceeds and the remaining amount of the debt.

The purpose of that notice is to give B a chance to come up with the money to purchase the car back or beckon others to buy it. The more buyers B can beckon to bid up the car's price, the greater the chance B has of closing the deficiency gap and thus avoid a deficiency judgment. But what if C fails to send B the notice, or mishandles it (*e.g.*, affixes insufficient postage) so that B never gets it?

In a consumer-based financing arrangement, B will now enjoy a rebuttable presumption that the debt equals the vehicle's sale price. Hence, C's deficiency pursuit will be barred if C cannot rebut that presumption. But B also is entitled to something more since, due to C's misstep, B has now lost a chance to beckon bids that might have exceeded the loan amount and thus created a surplus that legally belongs to B. With no sale, B also has lost an opportunity to prove the amount of that surplus. Thus, the law provides B with an alternative, statutory damages formula as compensation.

The problem here is that Georgia law provides two overlapping statutes with statutory damage remedies. Which one should apply here is one issue; what limitations statute governs B's defective-notice claim is another. These and other issues are addressed below.

### II. BACKGROUND

Plaintiff Lynette Tankersley Eden purchased a car financed by defendant CitiFinancial Auto, Ltd. (CitiFinancial). Doc. # 1 (Complaint) ¶¶ 1-15. After she defaulted on that loan,[1] CitiFinancial repossessed and then sold the car. *Id.* Eden alleges that the defendant then pursued a deficiency judgment against her[2] without first providing her with proper post-repossession notice of sale under Georgia's Motor Vehicle Sales Finance Act (MVSFA), O.C.G.A. § 10-1-36(a), and Georgia's UCC Article 9 ( O.C.G.A. § 11-9-607 - § 11-9-614). *Id.* ¶ 16-25.

Plaintiff therefore brought this action, alleging that CitiFinancial violated the MVSFA and its UCC counterpart by failing to give notice, along with violations of redemption and accounting requirements. Doc # 1 ¶¶ 26-49. CitiFinancial also violated the Fair Debt

---

[1] In fact, her son co-signed the loan, doc. # 35 at 22-23 & exh. 1; doc. # 36 exh. 1, but for convenience the Court will reference only Lynette hereafter.

[2] There is no dispute that the loan documents authorized personal recourse for any post-default, post-repossession deficiency. Doc. # 32 (Jacobs Aff.) ¶ 4; # 36 exh. 3 at 2.

Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, she further alleges, when it contacted her directly and via two collection agencies after she informed it that she was represented by counsel. Doc. # 1 ¶¶ 50-72.

Finally, Eden also pursues the defendant for violating the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, by reporting her contested debt to a credit reporting agency. Doc. # 1 ¶¶ 73-80. She seeks FCRA and O.C.G.A. § 13-6-11 attorney fees, plus punitive damages. *Id.* ¶¶ 81-89.

CitiFinancial denies liability, counterclaims for a deficiency judgment, and moves for summary judgment. Doc. ## 3, 32. Eden herself moves for partial summary judgment. Doc. # 28. Meanwhile, she has dropped her FDCPA claim, doc. # 38; # 40 at 10; # 41 at 3, and the Court has denied her motion for leave to amend her complaint to allege a class action. Doc. # 30.

### III. ANALYSIS

#### A. Governing Standards[3]

The MVSFA applies to the financing of motor vehicle sales in Georgia, including the recovery of a deficiency against a buyer following the repossession and sale of the vehicle that secures the financing loan. O.C.G.A. § 10-1-36(a). A financing seller cannot recover a deficiency against a buyer unless, within ten days of the repossession, the seller notifies the buyer by registered or certified mail of its intent to pursue a deficiency claim. *Id.; see also Financila Federal Credit Inc. v. Boss Transp., Inc.*, 2006 WL 901722 at * 5 (M.D.Ga. 4/6/06) (unpublished).

Failure to comply with § 10-1-36(a) bars a deficiency judgment. *In re Chambliss*, 315 B.R. 166, 170 (Bankr.S.D.Ga. 2004); *Ali v. World Omni Financial Corp.*, 240 Ga.App. 9, 9-10 (1999) (Creditor's failure to give defaulted purchaser proper notice of sale of repossessed vehicle barred creditor from recovering deficiency judgment). Whether the aggrieved debtor is also entitled to damages for such non-compliance is addressed in Part III (F) *infra*.

The UCC imposes similar standards on creditors;[4] that statute naturally leads to the question whether the UCC remedy is redundant here. As explained in 10 ANDERSON U.C.C. § 9-504:11 (3d ed. Sept. 2005), some states apply a local non-UCC Code statute like the MVSFA when the creditor is a *dealer* in the kind of collateral involved. *Id.*

---

[3] This Court will apply the summary judgment standards recounted in *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

[4] As the Georgia Supreme Court explained:

> The UCC's statutory framework makes clear that repossession alone is not enough to extinguish the debtor's ownership in the collateral, but that a creditor must go through additional steps after repossession to obtain ownership. For example, OCGA §§ 11-9-610 to -614 provide the procedure by which a creditor may dispose of collateral after default, and OCGA § 11-9-610(c) specifically provides that the "secured party may purchase [the] collateral."

*Motors Acceptance Corp. v. Rozier*, 278 Ga. 52, 53 (2004). A debtor has other rights (under Georgia's version of the UCC) after repossession in addition to the right of redemption, including the right to notice before disposal of the collateral; the right to demand that the creditor exercise due care to preserve the collateral; the right to any surplus; and for damages for a creditor's failure to comply with the UCC's requirements. *Id.* at 53.

That *may* be the case in Georgia. In fact, ANDERSON cites *Ervin v. Arnold*, 197 Ga. App. 841, 842 (1990) (lender who repossessed was governed by the UCC and thus was *not* required to comply with the MVSFA's notice requirements because lender was not engaged in the business of selling motor vehicles to retail buyers in retail installment actions), *cited in* HAND. AUTO. WARR. & REPOSS. § 12:33 (2d ed. July 2005), *and* 4 GA. JUR. BUSINESS TORTS AND TRADE REGULATION § 5:37 (Nov. 2005) ("The notice requirements of the [MVSFA] only apply to those persons who are engaged in the business of selling motor vehicles to retail buyers in retail installment actions, even where the property that was sold in a transaction could be considered a 'motor vehicle' under the provisions of the Act") (footnote omitted).

Yet some Georgia cases reach a contrary result. *Lacy v. Gen. Fin. Corp.*, 651 F.2d 1026, 1027-28 (5th Cir. 1981) (Georgia law) (applying *both* statutes in overlapping fashion to a non-dealer lender who financed a motor vehicle purchase); *accord Calcote v. Citizens & Southern Nat'l Bank*, 179 Ga.App. 132, 133-34 (1986). Both *Lacy* and *Calcote* invoked the MVSFA's notification requirement to determine what constitutes reasonable notice under Georgia's *UCC* repossession-notice-deficiency scheme, which is now primarily codified within O.C.G.A. § 11-9-610 - § 11-9-614. In fact, the *Calcote* court pointed out that the MVSFA "must be read in conjunction with [Georgia's UCC provisions]." 179 Ga.App. at 133; *see also* O.C.G.A. § 10-1-36(c) (the MVSFA remedies provide "cumulative additional rights and remedies which must be fulfilled before any deficiency claim will lie against a buyer ...").

Neither of these cases has been overruled, and the *Ervin* court did not even mention them. This may be why CitiFinancial -- even though it is not a car dealer -- does not invoke an *Ervin* defense here (*i.e.*, that CitiFinancial is not a dealer, only a lender, so the MVSFA is inapplicable). The Court therefore will follow the *Lacy-Calcote* analytical framework. Eden is free to invoke the MVSFA/UCC framework of remedies here.

When repossession occurs the MVSFA's 10-day notice period begins, and the

> notice need only be sent within 10 days of repossession by registered or certified mail to the address shown on the contract or to the one later designated by the buyer to be effective[. However,] there is no requirement that the notice be received. Thus, a debtor may not evade notification by refusing to accept certified mail if there is a reasonable attempt to deliver notice to the debtor's address.

4 GA. JUR. BUSINESS TORTS AND TRADE REGULATION § 5:37 (Nov. 2005); GA. ENFORCEMENT SECURITY INTERESTS PERSONAL PROPERTY § 8-4 (3d ed. 2006).

Diligence is required of *both* creditors and debtors. A debtor who fails to keep her creditor apprised of her address change, for example, will not be heard to complain when the creditor's MVSFA notice comes back "unclaimed." *Calcote*, 179 Ga. App. at 133 (although letter containing notice was twice returned unclaimed to secured party, notice was reasonable because secured party mailed it to debtor's current address, as well as location where car was repossessed; "[t]here is no requirement in OCGA § 10-1-36 that the debtor actually receive notice"); *Lacy*, 651 F.2d at 1028 (even though notice was returned undelivered and marked "moved, left no address," reasonable notification was given when secured party mailed to address provided

3

in finance contract); *see also Hill v. Fed. Employees Credit Union*, 193 Ga.App. 44, 45 (1989) (Two attempts to deliver certified mail to borrower's correct address and borrower's refusal to accept delivery complied with requirement that buyer of vehicle actually receive notice of intention to seek deficiency).

Similarly, a creditor also must strictly comply with the statutory remedies. It must sell collateral in strict compliance with the UCC's notice of sale provisions, lest it prevent a purchaser or owner from exercising his right of redemption under the above statutes. Failure to comply can preclude a deficiency recovery. *GEMC Fed. Credit Union v. Shoemake*, 151 Ga.App. 705, 705-06 (1979) (Although debtor was notified by certified mail that in event of sale creditor would pursue deficiency claim, where such notice did not advise debtor of any contemplated public or private sales, creditor did not comply with statute governing notification of sale of collateral to be given by secured party to debtor).

### B. Eden's Summary Judgment Motion

Eden's partial summary judgment motion is straightforward: CitiFinancial "did not give the plaintiff the post-repossession notices required by [the MVSFA and UCC], so the plaintiff is entitled to statutory damages." Doc. # 28 at 1. CitiFinancial's counterclaim for the deficiency fails, she argues, because its failure to provide an MVSFA notice bars recovery. *Id.* at 1-2. She therefore demands $5,443.45 in O.C.G.A. § 11-99-625(c)(2) (Georgia's UCC) damages and $8,329.18 in MVSFA damages. *Id.* at 7, 9.

### C. CitiFinancial's Summary Judgment

CitiFinancial, in turn, moves for summary judgment against Eden's MVSFA claim on the grounds that (a) she was provided statutorily compliant post-repossession notice; (b) the MVSFA affords her no private right of action but acts only as a deficiency-collection bar (*i.e.*, its civil penalty remedies are limited to other types of violations); (c) even where monetary damages are permitted, the MVSFA requires a showing of willfulness that Eden cannot show; and (d) her MVSFA claim is untimely. Doc. # 33 at 4-8; # 41 at 1-2.

Defendant also attacks Eden's UCC claim on the grounds that it provided statutorily compliant notice. *Id.* at 8-9. It also argues that Eden's FCRA claim fails because that statute provides no private right of action. Doc. # 33 at 11-12. Even were that not the case, CitiFinancial argues, her claim fails on the merits because an FCRA claim depends on inaccurate credit reporting, and Eden failed to point to any such reporting here. *Id.* at 12-14.

Because plaintiff's substantive claims fail, CitiFinancial further argues, her punitive damages claim -- dependent on the existence of viable compensatory damages claims -- likewise fails. Doc. # 33 at 14. Defendant also is entitled to judgment on its counterclaim for a deficiency judgment, it contends, because Eden does not question the accuracy of the $6,887.94 deficiency arising from the resale of the subject vehicle. *Id.* at 15. Defendant also pursues $713.79 in attorney fees and costs under the formula set forth in O.C.G.A. § 13-1-11(a)(2). *See Financila*, 2006 WL 901722 at * 7.

Finally, CitiFinancial's challenge to Eden's FDCPA claim is moot because she has dropped it. Doc. # 33 at 9-11; # 38; # 40 at 10; # 41 at 3. Eden has countered defendant's arguments in a series of briefs. Doc. ## 39, 40, 42, 43.

4

### D. Notice

#### 1. *Delivery*

This case turns on whether CitiFinancial certified-mailed a legally sufficient deficiency notice to Eden. Eden says that defendant never did mail it, and in any event it is substantively defective. Doc. # 43 at 1-10. CitiFinancial first jumps ahead and claims harmless error because Eden admits she would have been unable to redeem the vehicle even if notified. Doc. # 33 at 9. She responds that she need not show reliance and is entitled to statutory damages -- that there is no such "harmless error" escape hatch here. Doc. # 43 at 10-11.

CitiFinancial also asserts that it mailed Eden notice via certified mail, doc. # 32 (Jacobs Aff.) ¶ 7, but Eden points to defendant's own records, which show that the "letter sent 12/4 was returned destroyed[, and thus] may need to be recreated if nec." Doc. # 39 (attached Request for Admissions, attaching "CITI 0054" document); # 40 at 1-2.

CitiFinancial admits that the "CITI 0054" document is one of its business records, doc. # 39 (attached Request To Admit responses ¶¶ 8-9), but denies that it references the statutory, repossession/sale notice that it was required to send Eden. *Id.* ¶ 10. It further denies that it made no effort to re-send such notice. *Id.* ¶ 11. Yet it supports those denials with no sworn testimony or attestation from anyone with personal knowledge. Nor does it adduce any competent evidence to show what became of the "destroyed" 12/4 notice, much less what it was.

Furthermore, there is no dispute that CitiFinancial dated its statutory, "repo-resale" notice to Eden 12/4/03. Doc. # 36 exh. 7. That is the same date as CitiFinancial's own internal notation that a 12/4/03 letter to Eden "was returned destroyed[, and thus] may need to be recreated if nec." Nor, finally, does CitiFinancial point to any other document that it sent to her which also bears that date.

To that end, defendant's copy of the notice letter itself bears no certified-mail number, and CitiFinancial points to no return receipt showing that it mailed Eden the letter. *Cf. Busquets-Ivars v. Ashcroft*, 333 F.3d 1008, 1009 (9th Cir. 2003) (While it is presumed that a properly addressed piece of mail placed in the care of the Postal Service has been delivered, no such presumption of delivery exists for certified mail when the requested return receipt is not received by the sender); *see generally* 1 HANDBOOK OF FED. EVID. § 301:14 (6th ed. 2006). For that matter, Eden swears she never received it. Doc. # 28 (Eden Aff.) at 11-13.

Despite this evidence, CitiFinancial insists that it mailed the notice to Eden. Doc. # 40 at 2. It cites its own representative's (Thomas Jacobs's) attestation on that score, and he bases his assertion "upon my personal knowledge *and* upon my review of documents, records, and data compilations made and kept in the regular course of [defendant's] business ...." Doc. # 32 (attached Jacobs Aff. ¶ 1) (emphasis added).

However, while Jacobs asserts that CitiFinancial sent the 12/4/03 notice to Eden, *id.* ¶ 7, he lays no foundation to show his personal knowledge (*e.g.* he does not swear that he mailed it personally) that the letter in fact was sent. Nor does CitiFinancial deny plaintiff's assertion that Jacobs attested from Colorado about a letter claimed to have been sent from Charlotte, N.C. Doc. # 40 at 3.

The Court therefore agrees with Eden that a jury issue exists over whether CitiFinancial in fact mailed its statutory notice to Eden. The

Court further agrees that where (as a jury could so find here) a creditor is informed that its own notification attempt has failed, some reasonable attempt at re-notification must be attempted.

That obligation derives from the reasonable diligence baseline noted above. Again, just as a debtor who fails to keep her creditor apprised of her address change cannot be heard to complain, a creditor who fails to update his records upon such notice cannot be said to have complied with the MVSFA's notice provisions. *See Brack Rowe Chevrolet Co. v. Walls*, 201 Ga. App. 822, 823-24 (1991).

Nor, then, should it be sufficient if the creditor has reason to know or reasonably should know that by some mechanical or human failure (*e.g.*, insufficient postage) the letter likely never did reach its destination. *See, e.g., Edmonson v. Air Serv. Co.*, 123 Ga. App. 263, 264 (1971) (Where only attempt made by secured creditor to notify defaulting debtor of the time of a private sale of a repossessed backhoe was by a letter addressed to debtor and mailed by certified mail, and where the letter was returned to sender marked unclaimed and stamped "postage due 9 cents," debtor did not receive notification of time of the backhoe's private sale and thus was not liable for deficiency).[5]

---

[5] An encyclopedic source has collected a variety of cases showing, ultimately, that creditors must employ reasonable notification efforts:

> *See Ford Motor Credit Co. v. Solway*, 825 F.2d 1213, 4 U.C.C. Rep. Serv. 2d 630 (7th Cir. 1987) (notice sent to dealer-guarantor's address listed on guaranty held reasonable since financer was not aware of address change); *In re Bush*, 166 B.R. 69, 23 U.C.C. Rep. Serv. 2d 1270 (Bankr. W.D. Va. 1994), *judgment rev'd*, 169 B.R. 34 (W.D. Va. 1994) (bank violated notice requirement by sending letter to incorrect address that debtor had not used in six years when in fact personnel at branch fully knew current address); *Day v. Schenectady Discount Corp.*, 125 Ariz. 564, 611 P.2d 568, 28 U.C.C. Rep. Serv. 927 (Ct. App. Div. 2 1980); *Brack Rowe Chevrolet Co. v. Walls*, 201 Ga. App. 822, 412 S.E.2d 603 (1991) (dispute whether debtor provided forwarding address to financier); *Commerce Bank of St. Louis, N.A. v. Dooling*, 875 S.W.2d 943, 23 U.C.C. Rep. Serv. 2d 649 (Mo. Ct. App. E.D. 1994) (where notice sent to debtor's home was returned "no such address" and debtor's home and work numbers and work address were on loan application, bank could have tried harder to learn her correct address); *Mallicoat v. Volunteer Finance & Loan Corp.*, 57 Tenn. App. 106, 415 S.W.2d 347, 3 U.C.C. Rep. Serv. 1035 (1966), *on reh'g*, 4 U.C.C. Rep. Serv. 49 (Tenn. Ct. App. 1967) (where registered letter was returned unclaimed, financer's failure to use information concerning debtor's place of employment and parent's address precluded recovery of deficiency judgment); *Chrysler Dodge Country, U.S.A., Inc. v. Curley*, 782 P.2d 536, 11 U.C.C. Rep. Serv. 2d 381 (Utah Ct. App. 1989) (notice sent to debtor's brother-in-law's address held reasonable where debtor had moved several times without leaving a forwarding address but had informed seller that brother-in-law was taking over payments and last payment had been received from that address); *First Virginia Bank-Mountain Empire v. Ruff*, 17 U.C.C. Rep. Serv. 2d 663 (Va. Cir. Ct. 1992) (bank mailed notice to address listed on sales contract but knew address was wrong and that notice was not received).

HAND. AUTO. WARR. & REPOSS. § 12:42 n. 4 (2d ed. July 2005).

Diligence, for that matter, is part of the

creditor's duty of good faith imposed by Georgia law. *Geohagan v. Commercial Credit Corp.*, 130 Ga.App. 828, 830 (1974) (Duties of secured party with reference to sale of collateral after default imposes obligation of good faith in performance of those duties); *accord Lacy*, 651 F.2d at 1028. That means that the creditor must act reasonably in the face of an obvious flaw in its notification process. States, incidentally, are similarly obligated under due process norms. *Jones v. Flowers*, 126 S.Ct. 1708, 1713 (2006) (When mailed notice of tax sale is returned unclaimed, State, as matter of due process, must take additional reasonable steps to attempt to provide notice to property owner before selling property, if it is practicable to do so).

Because CitiFinancial's own business records strongly suggest that mechanical failure may very well have waylaid its notice to Eden, and because it fails to point to dispositive corroborative evidence, plaintiff has raised a question of fact over whether CitiFinancial satisfied its notice requirement to her. Defendant's summary judgment motion on these grounds therefore is denied. Likewise for Eden's summary judgment motion on this issue.

## 2. *Contents of the Notice*

Eden illuminates CitiFinancial's notice that it "may" sell her collateral (her car)[6] and contends that this does not comply with § O.C.G.A. § 11-9-614, which uses the words "will sell" in its prescribed notice.[7] O.C.G.A. § 10-1-36(a), she points out, similarly requires an expressed intent to sell the repossessed collateral and pursue any remaining deficiency.[8]

---

[6] CitiFinancial's letter warned that "[i]f we get less money than you owe [from the sale of the automobile], you may still owe us the difference." Doc. # 36 exh. 7; # 41 at 2.

[7] Section 11-9-614 provides:

> In a consumer goods transaction, the following rules apply:
>
> (1) A notification of disposition must provide the following information:
>
> (A) The information specified in paragraph (1) of Code Section 11-9-613;
>
> (B) A description of any liability for a deficiency of the person to which the notification is sent;
>
> (C) A telephone number from which the amount that must be paid to the secured party to redeem the collateral under Code Section 11-9-623 is available; and
>
> (D) A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available;
>
> (2) A particular phrasing of the notification is not required;
>
> (3) The following form of notification, when completed, provides sufficient information:
>
> \*     \*     \*
>
> We *will* sell (describe collateral) at public sale. A sale could include a lease or license. The sale *will* be held as follows....

(Emphasis added).

[8] Section 10-1-36.1(a) provides in pertinent part:

> (a) When any motor vehicle has been repossessed after default in accordance with Part 6 of Article 9 of Title 11, the seller or holder shall not be entitled to recover a deficiency against the buyer

Doc. # 43 at 8-10. Plaintiff argues that intent must be clearly expressed, lest the debtor be lulled into inaction in trying to prevent any deficiency judgment. For example, it obviously would be far more difficult to beckon other buyers if the borrower could not tell them for certain whether the repossessed vehicle will be sold. Doc. # 42 at 7-9; # 40 at 4; # 43 at 8. She thus equates CitiFinancial's equivocation over whether it unmistakably would pursue a deficiency against her with equivocation over whether defendant in fact would sell her repossessed car.

To that end, Eden highlights the Jacobs affidavit reflecting CitiFinancial's own understanding that at most it "might" seek a deficiency from her. Doc. # 40 at 2; doc. # 32 (attached Jacobs Aff. ¶ 7) (describing defendant's MVSFA/UCC notice that it would sell the vehicle and "might seek from [Eden] a deficiency after the sale").

Debtors typically prevail in deficient-notice cases where they can show that a reasonable person would *not* be able to reasonably determine *whether* and *when* his collateral will be sold. *See Shoemake*, 151 Ga.App. at 705-06; *Benton-Lincoln Credit Serv., Inc. v. Giffin*, 617 P.2d 662, 664 (Or.App. 1980) (Letter, which was sent to debtor after he defaulted on installment contract involving pickup truck and voluntarily surrendered possession of truck to secured party, did not give debtor sufficient notice of secured party's private sale of truck so as to satisfy state UCC statute where the only specific action of which debtor was notified by the letter was secured party's intention to apply for certificate of title and letter's only reference to a sale merely indicated that it was one of the remedies reserved to such party); *Thong v. My River Home Harbour, Inc.*, 3 S.W.3d 373, 378 (Mo.App. 1999) (Letter from secured creditor regarding disposition of repossessed boat did not serve purpose of UCC notice, where letter did not inform debtor that boat would be sold either at a public sale at a given time and place or at a private sale but only indicated that sale was one available remedy and informed debtor that he had to cure default within ten days from date of letter or creditor would take possession and exercise its rights, including sale of boat).

---

unless within ten days after the repossession he or she forwards by registered or certified mail or statutory overnight delivery to the address of the buyer shown on the contract or later designated by the buyer a notice of the seller's or holder's *intention* to pursue a deficiency claim against the buyer. The notice shall also advise the buyer of his or her rights of redemption, as well as his or her right to demand a public sale of the repossessed motor vehicle. In the event the buyer exercises his or her right to demand a public sale of the goods, he or she shall in writing so advise the seller or holder of his or her election by registered or certified mail or statutory overnight delivery addressed to the seller or holder at the address from which the seller's or holder's notice emanated within ten days after the posting of the original seller's or holder's notice.

Section 10-1-36.1(a) (emphasis added). This statute does not mention "may" or "will" but expressly notes: "(c) This Code section is cumulative of Part 6 of Article 9 of Title 11 and provides cumulative additional rights and remedies which must be fulfilled before any deficiency claim will lie against a buyer, and nothing herein shall be deemed to repeal said part." Hence, CitiFinancial was required to comply with § 11-9-614.

Thus, a party entitled to notice does not have such notice as satisfies the requirements of the [UCC] when the party merely has knowledge or reason to know that the collateral has been repossessed and will *eventually* be sold, or that the creditor intends to sell the repossessed collateral "as expeditiously as possible." Likewise, the fact that the debtor is aware of an impending sale of the collateral does not constitute the "notice" required by the Code. *A fortiori*, a letter that is substantially a demand for payment, a warning that the collateral would be sold at public sale *if* payments were not made, a warning that the collateral would be sold to the highest bidder, or a warning that the debtor would be liable for a deficiency *should* there be a sale, is insufficient as a notice of the sale of the collateral.

10 ANDERSON U.C.C. § 9-504:601 (3d ed. Sept. 2005) (footnotes omitted; emphasis added).

In this case the "may" in CitiFinancial's notice is deficient. That a lender "may" seek a deficiency is materially distinct from stating that it "will" do so. "May" might lull a debtor to be less assiduous about beckoning bidders. It sets the debtor's financial liability exposure level at an undetermined level, and can mean different things to different people within a statutory scheme that is designed to promote, at bottom, accuracy and certainty.

To this CitiFinancial responds with precedent that essentially says that [t]he "contents of a notification providing substantially the information required by statute are sufficient, even if the notification includes additional information or *minor* errors that are not *seriously* misleading. [And a] particular phrasing of the notification is not required." GA. ENFORCEMENT SECURITY INTERESTS PERSONAL PROPERTY § 8-4 (3d ed. 2006) (emphasis added). Is the use of "may" here a minor error that is not seriously misleading?

More importantly, does deciding that issue present an issue of fact here? Some say yes, GA. ENFORCEMENT SECURITY INTERESTS PERSONAL PROPERTY § 8-4 (3d ed. 2006), though summary judgment is not out of the question. *See Cessna Fin. Corp. v. Wall*, 876 F.Supp. 273, 274 (M.D.Ga. 1994) (General rule is that trier of fact is called upon to determine commercial reasonableness of private sale of aircraft after repossession under Georgia law; however, this issue of fact may be appropriate subject for summary judgment or directed verdict), cited in Ann., *Sufficiency of secured party's notification of sale or other intended disposition of collateral under UCC sec. 9-504(3)*, 11 A.L.R.4TH 241 § 18(a) (1982).

In that it is hardly clear whether the defect here is minor and not seriously misleading, an issue of fact exists over whether CitiFinancial failed to strictly comply with Georgia's UCC/MVSFA notice requirements. The Court therefore denies both parties summary judgment on this issue.

### E. Statute of Limitations

CitiFinancial argues that, even if Eden's MVSFA/UCC notice claim has merit, it nevertheless is barred as untimely. Neither party has cited any precedent establishing which limitations statute applies to the MVSFA or UCC in this context. In that regard, *see Moyer v. Citicorp Homeowners, Inc.*, 799 F.2d 1445, 1452 n. 20 (11th Cir. 1986) (Georgia law) (analyzing but not deciding which of several limitations statutes might apply to the

9

MVSFA); *Doyle v. Southern Guar. Corp.*, 795 F.2d 907, 914 (11th Cir. 1986) (applying one-year limitations period limited to MVSFA "usury actions" but expressly limiting that period to "actions to affirmatively cover interest paid more than a year before the action was instituted").

Specific limitations statutes exist in Georgia law, but none speak specifically of the MVSFA/UCC notice claims. The parties agree, however, that this action is traceable to the financing contract between these parties.

In that respect, oral, open account, and implied contracts fetch Georgia's four-year limitations period as set forth in O.C.G.A. § 9-3-24, § 9-3-25 and § 9-3-26. There is also a one-year limitations statute for actions brought by "informers" (*i.e.*, those who seek to enforce a prohibitory statute's penalty provision):

> All actions by informers to recover any fine, forfeiture, or penalty will be commenced within one year from the time the defendant's liability thereto is discovered or by reasonable diligence could have been discovered.

O.C.G.A. § 9-3-28; *see* GA. PRACTICE & PROCEDURE § 30:8 (2005 ed.). CitiFinancial argues that O.C.G.A. § 7-4-10(d),[9] which is another one-year limitation forfeiture/penalty statute, applies here and thus bars Eden's MVSFA and UCC claims. Doc. # 33 at 7. To that end, defendant cites *Doyle*, which applied § 7-4-10(d) but as noted above restricted it to actions to recover interest argued to be usurious -- something that's not even argued here (hence, *Doyle* is distinguishable and § 7-4-10(d) is inapplicable on its face). The *Moyer* court, for that matter, considered § 9-3-28 in another *usury*-based MVSFA case but avoided reaching the issue. *Moyer*, 799 F.2d at 1452 n. 20.

In fact, few cases construe § 9-3-28. *See, e.g., Western Union Tel. Co. v. Nunnally*, 86 Ga. 503, 12 S.E. 578, 578 (1891) (Acts 1887, having imposed on any telegraph company failing to deliver a message in due time a penalty to be recovered by the sender of the message, the law also imposed a one-year statute of limitations at [§ 9-3-28's predecessor], providing that all actions by informers for any fine, forfeiture, or penalty shall be commenced in one year from the time the defendant's liability was discovered, or, by reasonable diligence, could have been discovered); *Greene v. Lam Amusement Co.*, 145 F.Supp. 346, 348-49 (N.D.Ga. 1956) (pursuit of treble damages under antitrust laws was not a § 9-3-28 penalty, so § 9-3-28 does not apply to antitrust actions).

Could § 9-3-28 be applied here? If so, then CitiFinancial would prevail against Eden on her MVSFA claim. One predicate to answering that question is whether the MVSFA is a penalty statute. *See* GA. LAW OF DAMAGES § 6:5 (2005 ed.); *see also Central Nat'l Bank v. Dallas Bank & Trust Co.*, 66 S.W.2d 474 (Tex.Civ.App.

---

[9] In pertinent part § 7-4-10 states:

> (a) Any person, company, or corporation violating the provisions of Code Section 7-4-2 shall forfeit the entire interest so charged or taken or contracted to be reserved, charged, or taken. No further *penalty* or forfeiture shall be occasioned, suffered, or allowed.
>
> \* \* \* \*
>
> (d) No plea or action for the recovery of such forfeiture shall be barred by lapse of time shorter than one year.

*Id.* (emphasis added).

10

1933) (citing Georgia law) ("[T]he words 'penalty' and 'forfeiture' are generally used synonymously and a statute that inflicts forfeiture for its breach is considered penal in nature"); *Busbee v. Gillis*, 241 Ga. 353, 354-55 (1978) (Action brought by Board of Commissioners of Peace Officers' Annuity & Benefit Fund against county commissioners to collect a penalty for failure to pay amounts due to the fund for the fines and forfeitures collected by the state court of the county was governed by one-year statute of limitations applicable to actions by informers to recover any fine, forfeiture, or penalty rather than by 20-year statute of limitations for the enforcement of rights accruing under statutes).

But Georgia courts scrutinize the core claim in a case and apply the corresponding limitation statute accordingly. *See Sentry Ins. v. Echols*, 174 Ga.App. 541, 543 (1985) (Actions seeking optional personal injury protection (PIP) benefits under automobile policies are governed by six-year limitation period for actions on insurance contracts, rather than 20-year period for actions based on statutory rights, even though PIP statute permitted an additional recovery regarding such benefits which is essentially in the nature of a punishment for insurer's failure to comply with its contractual obligations, since action is nonetheless a suit to enforce rights existing by virtue of contract).[10]

So if an action is based upon rights arising from a contract without which there would be no claim, then -- even if the case is brought under a penalty statute -- it nonetheless is a "suit to enforce rights existing by virtue of a contract," and the statute governing such contracts applies. *Id.* at 543. "This fact is not altered merely because the statute permits an additional recovery which is essentially in the nature of a punishment for an insurer's failure to comply with its contractual obligations." *Id.*; *see also Jenkins v. Hyundai Motor Financing Co.*, 389 F.Supp.2d 961, 972-73 (S.D.Ohio 2005) (similar result applying analogous Ohio law).

Here the action would not exist but for the existence of the finance *contract* between the parties. Therefore, O.C.G.A. § 9-3-24 ("Simple contracts in writing") (four years) applies. Also, the statutory remedies pursued by Eden here are designed to compensate for a potential re-sale surplus rendered unquantifiable by the creditor's failure to comply with the UCC/MVSFA remedies. Hence, the statutory remedies Eden invokes are more like a compensatory measure than a penalty.

Since there is no dispute that Eden brought her action within four years of the repossession and deficiency notice, doc. # 1 (Complaint filed 4/1/05); doc. # 36 exh. 7 (12/4/03 notice letter), she is entitled to summary judgment against CitiFinancial on its limitations defense.

---

[10] As that court explained, there is also a 20-year limitation period contained in O.C.G.A. § 9-3-22, which applies to actions to enforce a statutory penalty. But

> [OCGA § 9-3-22] has reference only to rights which arise under legislative enactment, and which would *not* exist except for some Act of the legislature. [Cit.] *Houston v. Doe*, 136 Ga.App. 583, 584, 222 S.E.2d 131 (1975). "A statutory liability is one that depends for its existence upon the enactment of a statute, and not upon the contract of the parties. [Cit.]" *Bigby v. Douglas*, 123 Ga. 635, 638, 51 S.E. 606 (1905).

*Echols*, 174 Ga.App. at 543 (emphasis added).

### F. "Failed Notice" Damages

CitiFinancial next argues that, even if Eden can show that it failed to comply with the MVSFA and UCC and her claims are not time-barred, they still fail because she can show no damages. Plaintiff admits she could not have redeemed the car even if timely notified, defendant points out, and she basically agrees by arguing that she is entitled to "statutory damages" while at the same she seeks to extinguish defendant's deficiency claim against her. Doc. # 43 at 10-11.

For a creditor to recover a deficiency, "every aspect of the disposition of the collateral, including the method, manner, time, place, and terms, must be commercially reasonable." *Atlantic Coast Fed. Credit Union v. Delk*, 241 Ga. App. 589, 590-91 (1999).

"A disposition of collateral without notice is not commercially reasonable." GA. ENFORCEMENT SECURITY INTERESTS PERSONAL PROPERTY § 8-13 (3d ed. 2006). The "failure to give notice to the debtor creates a rebuttable presumption that the value received for the collateral is equal to the outstanding indebtedness." *Id.* In that respect, Georgia law, having adopted revised Article 9,[11] distinguishes between consumer transactions (the case here) and non-consumer transactions:

> A secured party need not prove that its disposition was commercially reasonable unless the debtor or a secondary obligor places the secured party's compliance in issue. [In that case,] the secured party has the burden of establishing that the disposition was commercially reasonable. If a secured party fails to prove that the disposition was commercially reasonable, the debtor or secondary obligor is in effect credited with the greater of the actual proceeds of the disposition or the proceeds which would have been obtained if the disposition had been commercially reasonable, and it is presumed that the amount of proceeds that would have been realized is equal to the full amount of the indebtedness unless the secured party proves that the amount is less than that amount.

*Id.* (footnote omitted).

*Consumer* transactions fetch additional remedies. Revised

> Article 9 leaves to the courts the determination of the proper rules, and courts may continue to apply established approaches. In addition to having an effect upon the secured party's right to recover a deficiency balance, failure to give notice may give rise to a claim for damages against the secured party for the loss of any surplus.

*Id.* (footnotes omitted). Though it was decided prior to the 2001, Article 9 revision, *Delk* has not been overruled, shown to be abrogated by the revision, or otherwise questioned. There the appellate court held that sufficient evidence supported the debtor's verdict upon his showing that his creditor failed to, post-repossession, sell his vehicle in a commercially reasonable manner:

> Under OCGA § 11-9-507(1), failure to conduct a commercially reasonable sale would entitle the debtor to recover any loss as a result of that failure. [¶] Even if

---

[11] "Article 9 of the Uniform Commercial Code, O.C.G.A. §§ 11-9-101 et seq., was repealed and replaced in its entirety in 2001." 5 GA. JUR. UCC § 11:196 (Aug. 2005); *see also* 5 GA. JUR. UCC § 11:202 (Aug. 2005).

the consumer debtor *does not prove* a specific monetary loss but proves that the creditor did not comply with the statute, the debtor is entitled to recover the finance charge plus [ten] percent of the principal amount of the contract if he or she proves those figures.

*Delk*, 241 Ga.App. at 591 (emphasis added).[12]

Similarly, here, Eden complains about the notice part of the foreclosure process on her personal vehicle, thus making this a consumer transaction case. *See id.*; *see also* O.C.G.A. § 11-9-625(c)(2). *Delk* supports her contention that defendant can invoke no "harmless error" defense (*i.e.*, that the debtor admits she lacked the funds to redeem her vehicle at the collateral sale, since such a debtor nevertheless can beckon others to try and close the deficiency gap[13]; on that score, CitiFinancial points to no admission by Eden that she would not have been able to beckon others to the sale of her collateral).

Therefore, pursuant to F.R.Civ.P. 56(d) (the court shall specify the issues for trial if it cannot grant summary judgment), the parties shall proceed to trial on these issues:(a) whether CitiFinancial in fact sent Eden its deficiency notice; (b) whether the notice was materially defective; and (c) whether Eden is entitled to damages.

As for damages, Eden has elected to pursue only the statutory remedies. Doc. # 42 at 2-3. But she seeks both the UCC *and* MVSFA statutory remedies. Doc. # 28 at 7, 9. That is, she demands $5,443.45 in O.C.G.A. § 11-99-625(c)(2) (Georgia's UCC) damages and $8,329.18 in MVSFA damages. Doc. # 28 at 7, 9. CitiFinancial neither challenges her computations nor raises a double-recovery argument.

While the MVSFA offers what has been construed to be an overlapping and cumulative remedy, O.C.G.A. § 10-1-38(c) (the MVSFA provision arguably relevant here)[14] "does not

---

[12] In pertinent part O.C.G.A. § 11-9-625(c)(2) now provides, as a remedy for a secured party's failure to comply with the UCC's notice requirements:

> If the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price.

[13] The purpose of requiring notice is three-fold. It gives the debtor an opportunity to exercise the right of redemption of the repossessed collateral ... It also gives him the chance to challenge any aspect of the disposition before it is made. Finally, it offers the debtor the opportunity *to seek out persons who might be interested in purchasing the collateral*

> ... Particularly the last two of these purposes serve the ultimate goal of allowing the debtor to maximize the sale price of the collateral and, thus, minimize any deficiency for which he will be liable.

*Reeves v. Habersham Bank*, 254 Ga. 615, 621 (1985) (quotes and cite omitted; emphasis added), *abrogated on other grounds, Emmons v. Burkett*, 256 Ga. 855, 856-57 (1987).

[14] CitiFinancial insists that the MVSFA damages provisions are limited to finance fee cap violations, not notice defects like those at issue here. Doc. # 33 at 6. Defendant may be right about this, but it is not necessary to resolve that issue in light of the result reached herein.

provide a civil remedy for non-willful violations of the relevant statutory provisions." *Ogletree v. Brokers South, Inc.*, 192 Ga.App. 53, 53 (1989); *Vickery v. Mobile Home Indus.*, 171 Ga.App. 566, 567 (1984) (the MVSFA does not provide a civil remedy for a nonwillful violation of contract requirements provision).

Furthermore, the evidence here at most shows that CitiFinancial was negligent in failing to recognize that its 12/4/03 notice was returned damaged (for that matter, a jury will have to determine if in fact that was the notice defendant was required to send Eden; Eden has only raised an issue of fact on that score). Because there is not even a jury question that CitiFinancial acted out of anything beyond inadvertence, Eden cannot invoke § 10-1-38(c) at trial. *Vickery*, 171 Ga.App. at 567 (Sellers of mobile home could not be subjected to MVSFA civil penalties for violation of contract requirements provision where any violation was inadvertent rather than intentional).

That leaves only the UCC remedy. In another "failed notice" case, the court noted that under

> Article 9, "a person is liable for damages in the amount of any loss caused by a failure to comply" with the statute. (Revised UCC § 9-625[b]; *see also* Former UCC § 9-507[1].) "Damages for violation of the requirements of [the statute] ... are those reasonably calculated to put an eligible claimant in the position that it would have occupied had no violation occurred." (Official Comment 3 to Revised UCC § 9-625.) There are, however, both supplements to and limitations on this general liability principle.
>
> "[A] debtor ... whose deficiency is eliminated or reduced under Section 9-626 may not otherwise recover ... for noncompliance with the provisions ... relating to enforcement." (Revised UCC § 9-625[d].) This provision "eliminates the possibility of double recovery or other over-compensation," *but* "[b]ecause Section 9-626 does *not* apply to consumer transactions, the statute is silent as to whether a double recovery or other over-compensation is possible in a consumer transaction." (Official Comment 3 to Revised UCC § 9-625.) Respected commentators "argue that double recoveries should be denied in consumer cases too." (*See* White and Summer, Uniform Commercial Code, § 25-13, at 919 [Fifth Ed. 2000].)

*Coxall v. Clover Commercial Corp.*, 781 N.Y.S.2d 567, 578 (N.Y. Cty. Civ. Ct. 2004) (emphasis added); *see also id.* (Debtor who purchased automobile from dealer was entitled to recover one statutory damage remedy under the UCC for secured party's failure to provide reasonable notification of sale of repossessed collateral automobile and failure to sell automobile in commercially reasonable manner in consumer transaction, with damages being computed by amount of time-price differential according to retail installment contract plus 10% of cash price -- *even if* debtor sustained no actual loss from secured party's failure to comply with UCC requirements), *cited in* GA. ENFORCEMENT SECURITY INTERESTS PERSONAL PROPERTY § 16-4 (3d ed. 2006) ("A secured party is not liable for the statutory penalty for consumer transactions more than once with respect to any one secured obligation").

The *Coxall* court also concluded that the elimination of the offending creditor's deficiency claim does not preclude the debtor's recovery of statutory damages. *Coxall*, 781

N.Y.S.2d at 578-79 (Denial of a deficiency recovery from a debtor to a secured party who does not comply with the UCC's provisions should *not* preclude the debtor's recovery of the statutorily-prescribed minimum damages from the secured party).

This Court agrees with that latter point; CitiFinancial cites nothing in the UCC/MVSFA statutory language dictating otherwise. Thus, if Eden prevails at trial and CitiFinancial fails to rebut the presumption that the sale proceeds equal her debt, she also will be entitled to the aforementioned *Delk* statutory damages, as clarified in note 12 *supra*.

### G. FCRA

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 22 (2001). "The Act creates a private right of action allowing injured consumers to recover any actual damages caused by negligent violations and both actual and punitive damages for willful noncompliance." *Id.* (quotes and cite omitted); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004).

While Eden does not specify which FCRA provision she invokes, the substance of her allegations are that CitiFinancial accurately reported the repossession to credit agencies but, now that the repossession is adjudged wrongful, that made such reporting defective, thus constituting a willful (as in malicious) FCRA violation. This claim fails:

> The FCRA, 15 U.S.C. § 1681s-2, regulates the responsibilities of furnishers of information to consumer reporting agencies. Subsection (a) provides that furnishers of information have a duty to furnish accurate information. Subsection (b) applies to the duties of furnishers upon notice of a dispute. Plaintiff brings his suit pursuant to subsection (a) as there is no allegation that plaintiff notified [CitiFinancial] of a dispute as is required by subsection (b). Subsection (a), however, is enforced exclusively by "the Federal agencies and officials and the State officials identified in that section." 15 U.S.C. § 1681s-2(d). Thus, plaintiff does not have a private right of action under the FCRA against [CitiFinancial] as a furnisher of information to consumer reporting agencies.

*Quigley v. Penn. Higher Educ. Assistance Agency*, 2000 WL 1721069 at * 2 (N.D.Cal. 11/8/00) (unpublished); *see also Howard v. Blue Ridge Bank*, 371 F.Supp.2d 1139, 1147 (N.D. Cal. 2005); *Olexy v. Interstate Assurance Co.*, 113 F.Supp.2d 1045, 1047 (S.D.Miss. 2000). For the same reasons as those set forth in *Quigley*, Eden holds no private right of action under the FCRA here. This result moots her remaining FCRA arguments.

### H. Punitive Damages

Eden alleges that CitiFinancial acted with specific intent to violate the UCC/MVSFA requirements and damage her. Doc. # 1 ¶¶ 87-89. However, as mentioned above she points to no evidence to support the requisite malicious or reckless conduct here -- only simple negligence at most. *Cf. Gateway Bank & Trust v. Timms*, 259 Ga.App. 299, 301 (2003) (Bank acted with entire want of care which raised presumption of conscious indifference to consequences of wrongful repossession of plaintiff's flatbed trailer, and thus, punitive damages award of $30,000 was justified, in action for trover, where no effort was made after repossession to identify owner of trailer,

15

bank did not notice license tag affixed to trailer during inspection after seizing trailer, and when plaintiff, as true owner of vehicle, called to demand return of trailer, bank merely referred her to its counsel). Therefore, defendant is entitled to summary judgment against Eden on her punitive damages claim.

### I. Attorney Fees

Plaintiff pursues attorney fees under the FDCPA, doc. # 1 at 19 ("Prayer For Relief") ¶ D, and possibly also the FCRA, *id.* ¶ (G) (again seeking same under FDCPA but perhaps this is a typo and she really meant FCRA). In light of the Court's rulings above, these claims also fail. But Eden also pursues O.C.G.A. § 13-6-11 attorney fees/costs. Doc. # 1 at 19 ¶ (F). That statute

> permits the jury to award attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." [Section 13-6-11]. If a bona fide controversy exists, the plaintiff may recover attorney fees under this Code section only if the defendant has acted in bad faith in the underlying transaction.

*DOT v. Hardin-Sunbelt, Joint Venture*, 266 Ga.App. 139, 146 (2004). Yet here the plaintiff also fails to cite sufficient evidence -- under any of the § 13-6-11 grounds -- to take this claim to trial. *Compare Gateway*, 259 Ga.App. at 302 (Award of attorney fees was warranted, in trover action against bank for wrongful repossession of flatbed trailer; bank acted in bad faith when it failed to attempt to identify trailer's owner prior to seizing it). The Court therefore grants defendant summary judgment on this claim.

CitiFinancial, in contrast, pursues O.C.G.A. § 13-1-11 attorney fees and costs on its deficiency-judgment counterclaim. Upon a deficiency, the holder of the indebtedness

> is required to notify the debtor of the obligation of attorney fees as agreed upon by the parties. O.C.G.A. § 13-1-11(a)(3). If the Note provides for payment of reasonable attorney fees, without specifying any specific percent, "such provisions shall be construed to mean fifteen percent of the first $500.00 of principal and interest owing on such note ... and ten percent of the amount of the principal and interest owing thereon in excess of $500.00." O.C.G.A. § 13-1-11(a)(2).

*Financila*, 2006 WL 901722 at * 7. Here the defendant at trial must show entitlement to its counterclaim (and rebut the above-described presumption if the jury finds its notice defective) and also demonstrate that it complies with the *Financila* requirements excerpted above. *See* doc. # 3 at 22 (Counterclaim seeking O.C.G.A. § 13-1-11 fees).

However, just as the Court has found insufficient evidence to support an O.C.G.A. § 13-6-11 fee claim by plaintiff against defendant, it likewise finds the same with respect to defendant's § 13-6-11 fee claim against plaintiff (doc. # 3 at 22 ¶ 12), so it *sua sponte* grants Eden summary judgment on that claim.

### J. Prejudgment Interest

Further narrowing the issues for trial under Rule 56(d), the Court notes that Eden seeks prejudgment interest, doc. # 1 at 20, while CitiFinancial does not. Doc. # 3 at 20-23. Whether to award prejudgment interest turns on whether an amount sought is liquidated (fixed and easily ascertainable) or unliquidated (*e.g.*

pain and suffering, which a factfinder must determine). *See Commercial & Military Sys. Co., Inc. v. Sudimat, C.A.*, 267 Ga.App. 32, 39 (2004) (authorizing prejudgment interest where damages are ascertainable at the time of a contract breach); 5 GA. PROC. VERDICT AND JUDGMENTS § 7:12 (*What constitutes liquidated claim, debt, or damages*) (Aug. 2005) ("[A]n amount claimed is a liquidated demand if it is susceptible of being made certain in amount by mathematical calculations from factors that are or ought to be in possession or knowledge of the party to be charged").

"Liquidated damages incur prejudgment interest as a matter of law." GEORGIA CONTRACTS: LAW AND LITIGATION § 12-25. (*Liquidated and unliquidated damages*) (2006).

Here the UCC/MVSFA notice provisions are read into the parties' financing contract as a matter of law, so the breach of those provisions constitutes a contract breach involving liquidated (indeed, statutorily set) damages. *See Delk*, 241 Ga.App. at 591 ("[T]he debtor is entitled to recover the finance charge plus [ten] percent of the principal amount of the contract if he or she proves those figures").

That, in turn, triggers application of O.C.G.A. § 7-4-15 (payment of interest on liquidated demands), which means that the plaintiff, should she prevail at trial, would be entitled to the legal rate (7%) of interest under O.C.G.A. § 7-4-2(a)(1)(A). *See Gray v. King*, 270 Ga.App. 855, 856 (2004).

## IV. CONCLUSION

Plaintiff Lynette Tankersley Eden's motion for partial summary judgment (doc. # 28) is **DENIED**. Nevertheless, the Court *sua sponte* **GRANTS** plaintiff summary judgment against defendant CitiFinancial Auto, Ltd. on its O.C.G.A. § 13-6-11 counterclaim against the plaintiff. Meanwhile, CitiFinancial's motion for summary judgment (doc. # 32) is **GRANTED** in part and **DENIED** in part. Finally, within 30 days of the date this Order is served, the parties shall file a Consolidated Pretrial Order.

This 12 day of June, 2006.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA